## FIFER et al. v. WILLIAMS.

(Circuit Court of Appeals, Ninth Circuit. April 20, 1925. Rehearing Denied May 25, 1925.)

No. 4465.

1. **Banks and banking** ⟜287(3) — **District court's order approving sale of national bank's assets by receiver not reviewable by Circuit Court of Appeals at instance of bank's creditors.**

District Court's order approving sale of national bank's assets, on receiver's application, under Rev. St. § 5234 (Comp. St. § 9821), is not reviewable by Circuit Court of Appeals, on appeal, under Judicial Code, § 128 (Comp. St. § 1120), by bank's creditors, since such proceeding is an ex parte proceeding to which the bank's creditors are not entitled to be parties and in which they have no right to be heard, and not a suit, and since funds to be collected from sale are not subject to disbursement by court, but by Comptroller, by whom receiver was appointed and is controlled.

2. **Banks and banking** ⟜287(1) — **National bank receiver does not submit himself and bank's assets to control of court by application for approval of sale of assets.**

Application by receiver of national bank appointed by Comptroller of Currency under Rev. St. § 5234 (Comp. St. § 9821), to District Court for approval of sale of assets, does not subject the receiver and the affairs of the bank to the jurisdiction of, or place assets of bank under control of, the court in the sense that receiver appointed by court and assets in his possession are under court's control.

Appeal from the District Court of the United States for the District of Montana; Charles N. Pray, Judge.

Proceeding by Fred D. Williams, as receiver of the First National Bank of Fergus County, in Lewistown, for authority to sell bank's assets. From an order authorizing sale and approving plan of reorganization, E. J. Fifer and other creditors appeal. Appeal dismissed.

S. C. Ford, Frank Woody, and Wellington D. Rankin, all of Helena, Mont., for appellants.

E. K. Cheadle, of Lewistown, Mont., T. B. Weir, of Helena, Mont., and William F. Humphrey and Robert M. Light, both of San Francisco, Cal., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. In December, 1923, the First National Bank of Fergus County, Mont., a national bank, suspended business and was declared insolvent by the Comptroller of the Currency, who appointed F. D. Williams receiver. Williams took charge of the assets, and in 1924 the receiver applied to the District Court of the United States for the District of Montana for authority to sell all of the assets of the bank which then or might thereafter come into his hands as receiver, on terms and conditions set forth in his petition. The plan was as follows: (1) The assets were to be sold for a certain sum, approximately, $2,106,000, representing the sum of the indebtedness of the insolvent bank to the Federal Bank, the preferred claims against the insolvent bank, and 50 per cent. of the unsecured claims. (2) All of the assets were included except stock assessments and cash necessary to pay receivership expenses, such assets being divided into two groups. Title to the assets was to vest immediately in the purchaser. One kind of assets was to be held by three trustees for the purpose of transferring the same at a specified value, or the proceeds thereto, to the purchaser in satisfaction of certificates of indebtedness bearing interest at the rate of 2½ per cent. per annum, in the amounts of the difference between the total purchase price and the value of the assets comprised in another schedule C. (3) The terms of the sale stipulated for payment by the buyers of the preferred claims against the insolvent bank and of the debts due to the Federal Reserve Bank, and for the payment of the three trustees by certificates bearing interest at the rate of 2½ per cent. per annum in the amount of 50 per cent. of the unsecured claims. The trustees were authorized to deliver these certificates to the creditors entitled to the same as advances upon the claims of such creditors, or to collect the same at maturity and pay the proceeds to the creditors. Certificates were to mature in five installments and mature on the 1st day of December of the years 1925, 1926, 1927, and 1928, respectively. (4) The purchaser was to be a new national bank to be organized at Lewistown, Mont., with a paid-in capital of $150,000, and surplus of $30,000.

Section 5234 of the Revised Statutes (Comp. St. § 9821) provides that the Comptroller of the Currency may appoint a receiver and require of him such bond and security as he deems proper. The duty of the receiver is, under the direction of the Comptroller, to take possession of the books and assets of every description of the bank; collect all debts due and claims belonging to it; "and upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and on a like order may sell all the real and personal property of such association on such terms as the court shall direct, and may, if necessary to pay debts of such association, enforce the individual liability of the stockholders. Such receiver shall pay over all moneys so made to the Treasurer of the United States, subject to the order of the Comptroller, and also make report to the Comptroller of all his acts and proceedings."

The court set the petition for hearing and ordered general notice to be given. After general notice and at the time fixed for the hearing, several creditors and depositors objected in writing to any order of sale being made and to the proposed plan set forth by the receiver, basing their objections upon the ground that under the National Banking Act the proposed plan and agreement was not authorized. The court heard witnesses in support of the petition and in support of the objections thereto, and thereafter in a written memorandum held that the sale and reorganization proposed by the petitioning receiver was legal, and that as the plan proposed was recommended by the Comptroller of the Currency, the governor of the Federal Reserve District, the chief examiner, and the receiver of the bank, and many individual depositors, as for the best interest of the depositors, the receiver was authorized and directed to make the sale of all assets excepting unpaid stock assessments, cash collected on stock assessments, cash sufficient to pay the expenses of the receivership up to the date of taking effect of the sale, and all rights of action against the directors of the First National Bank of Fergus County, of which petitioner was receiver. Accordingly, an order was made. The order provides in detail how payment shall be made and how certain trustees shall be appointed, and how the assets in certain designated schedules shall be turned over by the new bank to such trustees to be administered by them, as di-

rected by the order. The court reserved the power at any time to remove any or all of the trustees and to appoint a successor or successors thereto, and ordered that jurisdiction should be retained until the trusteeship should finally be closed, and that petitioner report to the court his proceedings, together with an account thereof for such further order as may be proper.

The objecting creditors filed notice of appeal from the order of the District Court. The court allowed the appeal, fixed a bond for costs, and for a supersedeas.

[1] We are of the opinion that we are without authority to review the order of the District Court. In Cook County National Bank v. United States, 107 U. S. 448, 2 S. Ct. 561, 27 L. Ed. 537, the court held that the act (title 62, Revised Statutes, p. 992 et seq.) authorizing the formation of national banks constituted by itself a complete system both for establishment as well as government of such banks, including their liability to be put in the hands of a receiver, "and the manner, in such event, in which their affairs shall be wound up, their circulating notes redeemed, and other debts paid or their property applied toward such payment." The court continued: "Everything essential to the formation of the banks, * * * the winding up of the institutions, and the distribution of their effects, are fully provided for, as in a separate code by itself, neither limited nor enlarged by other statutory provisions with respect to the settlement of demands against insolvents or their estates."

It seems clear that the order involved in this proceeding was a step in the winding up of the affairs of the bank, and although made by a court of record of competent jurisdiction, still the funds collected from the sale are not subject to disbursement by the court, but by the Comptroller, by whom the receiver was appointed and controlled. In Kennedy v. Gibson, 75 U. S. (8 Wall.) 498, the court held that the receiver of a suspended national bank is the instrument of the Comptroller in whom rests the decision when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and that the stockholders cannot controvert the Comptroller's decision in a litigation that may ensue. Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168. In Ex parte Chetwood, 165 U. S. 443, 17 S. Ct. 385, 41 L. Ed. 782, it was held that the receiver of an insolvent national bank is not the officer of any court, but is the agent and officer of the United States, and that while under section 5234, when he deems it desirable to sell

or compound bad or doubtful debts, it devolves upon him to procure the order of a court of competent jurisdiction, nevertheless, the funds collected are disbursed by the Comptroller as in the instance of other collections. The authority referred to as vested in the Comptroller is not a vesting of judicial power. In Bushnell v. Leland, 164 U. S. 684, 17 S. Ct. 209, 41 L. Ed. 598, it was contended that under the National Banking Act the Comptroller of the Currency had no power to appoint a receiver of an insolvent national bank or to call for a ratable assessment of the stockholders of such bank without a previous judicial ascertainment for the necessity of the appointment of a receiver, and of the existence of the liabilities of the bank, and that giving authority to the Comptroller to appoint a receiver or to make a ratable call is tantamount to investing that officer with judicial power in violation of the Constitution. But the court dismissed the contention as long since settled and not open to further discussion.

[2] In the present matter, as in the Chetwood Case, supra, the application was entitled "In the matter" of the receivership of the insolvent bank. By the application the receiver did not submit himself and the affairs of the bank to the jurisdiction of the court; nor did the presentation of the application operate to make the receiver an officer of the court, or place the assets of the bank under the control of the court "in the sense in which control is acquired where a receiver is appointed by the court." In re Chetwood, supra. He belongs to the executive branch of the government, and his custody of assets is not that of the court. Farrell v. Stoddard (D. C.) 1 F.(2d) 802. The procedure outlined by the statutes did not contemplate a trial in court. And no case is cited which lends support to the view that the statute intended that an objecting creditor could litigate with the receiver—who represents creditors and the insolvent bank—the question determined by him as to the advisability of disposing of the assets of the insolvent institution. There is no suit; no parties in the legal understanding of the term; no process must issue; no one is authorized to appear on behalf of the receiver or any one else, or to subpœna witnesses. It is an ex parte proceeding, and, though by the will of Congress put under judicial cognizance, is not by its own nature a judicial controversy. The fact that, when the receiver filed his application, the judge sought information and directed that notice be published that the court would hear persons in-

terested in the insolvent bank upon the question of the proposed sale, does not change the administrative character of the proceeding. The course followed was, evidently, out of a cautious wish to gain advice that would be helpful in finally determining whether or not the order applied for by the receiver should be granted. Ex parte Cockcroft, 104 U. S. 579, 26 L. Ed. 856. No statute gave to the objectors any legal right to demand to be heard or to be made parties to the proceeding; nor is there any statutory provision for an appeal from an order for the sale of the assets of an insolvent national bank. For an attempt to make an illegal or fraudulent sale, doubtless, a remedy by suit would lie, and from a decision in such a suit appeal could be taken to this court; but that is aside from the matter before us. Section 128 of the Judicial Code (Comp. St. § 1120), which applies to ordinary civil actions at law or in equity, does not, as a rule, extend to the order made herein under special statutory proceedings. The motion to dismiss the appeal is sustained.

Dismissed.