### SMITH et al. v. WITHEROW.
### No. 6799.

Circuit Court of Appeals, Third Circuit.
March 15, 1939.

George V. Strong, of Philadelphia, Pa., for appellants.

William K. Rhodes, of Media, Pa., for appellee.

Before MARIS, CLARK, and THOMPSON, Circuit Judges.

MARIS, Circuit Judge.

W. Macklin Witherow, Receiver of the First National Bank of Darby (hereinafter called the Bank), brought suit in the District Court for the Eastern District of Pennsylvania against the executors of the will of Lewis Lawrence Smith, a deceased holder of 85 shares of stock in the Bank, to recover an assessment of 100% levied by

the Comptroller of the Currency upon the shares. The defendant executors filed an affidavit of defense, which on a rule for judgment the court held insufficient and entered judgment for the plaintiff. The present appeal followed. The facts set forth in the amended statement of claim which were admitted in the affidavit of defense, together with those averred in the latter pleading, briefly stated, were these:

On February 18, 1933 a financial panic prevailed. After banking hours on that day the Federal Reserve Bank of Philadelphia demanded payment by the Bank of certain items which became due on the following business day. The demand was refused and a run on the following business day became a certainty. The directors of the Bank thereupon at once adopted the following resolutions:

"Resolved that the withdrawal of deposits be restricted as follows:

"1. Pending further action by the Board of Directors no balances on deposit at the close of business on February 18, 1933, shall be withdrawn.

"2. A portion of the balances on deposit as of said date may be released from time to time when liquidation of assets warrants.

"3. All deposits made on and after February 20, 1933 will be segregated and subject to withdrawal without restriction.

"Be it further resolved that no loans be made while withdrawals are restricted.

"Be it further resolved that written notice of the foregoing action be sent to all depositors and shareholders."

The Bank immediately restricted its operations as directed by the resolutions and its doors were never thereafter re-opened for the payment of deposits in ordinary course.

On March 6, 1933 by proclamation of the President, No. 2039, 12 U.S.C.A. § 95 note, a bank holiday for all banks in the country was declared until after March 9th. By proclamation of March 9th, No. 2040, 12 U.S.C.A. § 95 note, the President extended the proclamation of March 6th until further proclamation. As a result of these proclamations every bank in the country was closed and all banking operations were suspended. By an executive order of the President promulgated March 10, 1933, No. 6073, 12 U.S.C.A. § 95 note, national banks were permitted to resume operations only when licensed so to do by the Secretary of the Treasury in his discretion. No license to resume banking was granted to the First National Bank of Darby, however, and on March 25, 1935 a conservator was appointed for it pursuant to the Bank Conservation Act of March 9, 1933, 12 U.S.C. § 201 et seq. 12 U.S.C.A. § 201 et seq. The conservator continued in possession until January 23, 1934 when a receiver was appointed. On March 27, 1934 the Comptroller of the Currency levied the assessment of 100% upon the stockholders of the Bank.

The affidavit of defense averred that on March 25, 1933 and at all times prior thereto the Bank was solvent. It further averred that the refusal of the Secretary of the Treasury to permit the Bank to reopen, the appointment of a conservator for its affairs, and its subsequent operation by the conservator had a disastrous effect upon its business and assets and in large measure were responsible for the conditions which led the Comptroller to conclude that on March 27, 1934 the Bank was insolvent.

The defendants contend that the taking over of the Bank while solvent by the Government through the appointment of a conservator and its operation by that official at a loss deprived them of their property without due process of law and consequently released them from their liability to pay the stock assessment. After full consideration, however, we have reached the conclusion that the court below was right in holding that the facts averred and admitted in the affidavit of defense did not disclose a valid defense to the assessment.

In the first place the bald averment in the affidavit of defense that the Bank was solvent after February 18, 1933, must yield to the evidentiary facts averred and admitted. These clearly disclose a state of insolvency from and after that date. A national bank is insolvent within the meaning of the National Bank Act 12 U.S.C. c. 2, 12 U.S.C.A. § 21 et seq. when it is unable to meet its obligations as they mature. Roberts v. Hill, C.C., 24 F. 571; Kullman & Co. v. Woolley, 5 Cir., 83 F.2d 129; Willing v. Eveloff, 3 Cir., 94 F.2d 344. Its status is determined by the closing of its doors, rather than by the theoretical state of its balance sheet which may include assets whose actual value is far less than that at which they are carried on its books.

In the present case the Bank voluntarily closed its doors to its then existing

depositors on February 20, 1933, and it never re-opened them. From that date it declined to meet its obligations and it never did meet them. Consequently it must be held to have been insolvent from that date, within the meaning of the National Bank Act. Its acceptance of unrestricted new deposits under the resolutions of February 18, 1933, did not alter this fact, nor did the acceptance of such deposits by the conservator under the authority of Section 206 of the Bank Conservation Act, 12 U.S.C. § 205, 12 U.S.C.A. § 206 have such effect, since this was in fact the carrying on of a new business for the purpose of maintaining the value of the Bank's good will. Willing v. Jensen, D.C., 17 F. Supp. 596.

National banks are instrumentalities of the Federal Government, created for a public purpose, and as such necessarily subject to the paramount authority of the United States. Davis v. Elmira Savings Bank, 161 U.S. 275, 16 S.Ct. 502, 40 L.Ed. 700. Their business is so intimately connected with the public interest that Congress may prohibit it altogether or prescribe the conditions under which it may be carried on. Sneeden v. City of Marion, Ill., 7 Cir., 64 F.2d 721.

In the exercise of this power Congress, in order to protect the interests of depositors, has provided by Section 5151 Revised Statutes, as amended by Section 23 of the Federal Reserve Act, 12 U.S.C. § 64, 12 U.S.C.A. § 64, that "The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock." This liability of the stockholders of a national bank is enforced by the Comptroller of the Currency who, if he becomes satisfied of the insolvency of a national banking association, may after due examination of its affairs appoint a receiver who shall proceed to close up such association and enforce the personal liability of the shareholders. 12 U.S.C. § 191, 12 U.S.C.A. § 191.

The shareholder's liability is imposed by the statute. The original subscriber and all vendees of his shares, upon assuming the status of a stockholder, assume it subject to the conditions and burdens imposed by the statute as incident to the holding of national bank shares. Pufahl v. Estate of Parks, 299 U.S. 217, 57 S.Ct. 151, 81 L.Ed. 133. One of these burdens is the contingent obligation to pay an assessment when ordered by the Comptroller. The Comptroller's action in making the assessment converts the stockholder's obligation into an absolute one. His action, being discretionary, is conclusive and not subject to attack in the courts, except for fraud on his part. Kennedy v. Gibson, 8 Wall. 498, 19 L.Ed. 476; Adams v. Nagle, 303 U.S. 532, 58 S.Ct. 687, 82 L.Ed. 999.

The defendants urge, however, that the action of the President in closing the Bank and its subsequent operation by the Comptroller through a conservator under the Bank Conservation Act deprived them of their property without due process of law and, since that operation resulted in further loss, it discharged them from their obligation to the creditors of the Bank under the statute. It is not necessary for us to consider whether invalid governmental action with respect to the Bank in which its creditors had no part would discharge the obligation of the stockholders to those creditors, since the governmental action which was taken was unquestionably valid in view of the insolvency of the Bank. But regardless of the technical insolvency of the Bank we are of opinion that the action taken by the President and the Comptroller of the Currency with respect to it did not violate the constitutional rights of the defendants.

As we have seen, the Bank was a governmental instrumentality performing a vital public function subject to governmental control. Its closing by Presidential proclamations was a reasonable step to be taken in the financial emergency which then confronted the country and was authorized by Section 5(b) of the Trading with the Enemy Act as amended by Section 2 of the Act of March 9, 1933, 12 U.S.C. § 95a, 12 U.S.C.A. § 95a and by Sections 1 and 4 of the latter act, 12 U.S.C. §§ 95, 95b, 12 U.S.C.A. §§ 95, 95b. This legislation was constitutional. City of East Cleveland v. Fidelity & Deposit Co., D.C., 5 F.Supp. 212; Hanley v. Corwin, D.C., 15 F.Supp. 396; affirmed 2 Cir., 89 F.2d 1008.

The appointment of a conservator under the Bank Conservation Act was likewise a reasonable step to protect the assets of the Bank for both creditors and stockholders. The purpose of the act was well stated by Justice Groner in Davis Trust Co. v. Hardee, 66 App.D.C. 168, 85 F.2d 571, 572, 573, 107 A.L.R. 1425, as

follows: "The act was passed March 9, 1933. Just prior thereto practically· all the banks in the country had been closed, and the aim and object of the act, as appears from its language, was, we think, to enable the Comptroller to appoint conservators rather than receivers where, in his judgment, there was a prospect that the bank of which a conservator should be appointed might, under his direction and control, later re-open and resume its corporate functions. It was an act designed to secure the temporary control, under the direction of the Comptroller, of all banks suspected of being insolvent, but as to which the situation was not so hopeless as then to require the appointment of a receiver. The conservator was to function during the test or probationary period, but during such period the status of the bank was to be the same as if a receiver had been appointed, which of course means that the withdrawals of deposits were forbidden, except as the Comptroller should authorize, and the ordinary business of the bank suspended."

█ As· Justice Groner indicated the act definitely looked toward the resumption of business (§ 205) or reorganization (§ 207) of a bank for which a conservator was appointed, but that official was nevertheless given all the rights, powers and privileges of a receiver (§ 203). His appointment was the equivalent of the appointment of a receiver of a corporation with leave to continue the business and quite similar to the appointment of a trustee in a proceeding for the reorganization of a corporation under the Bankruptcy Act, 11 U.S.C.A. § 207.

The defendants do not allege that they objected to the appointment of the conservator in 1933 when it was still hoped that the Bank might re-open. It comes with bad grace for them now to complain of this action which was taken for the benefit of all parties in interest including themselves. In view of the financial panic at the time it can hardly be contended that the Bank, which had voluntarily closed its doors to its old depositors, could have re-opened if a conservator had not been appointed. The defendants admit that when the Bank voluntarily closed a run by depositors impended which it could not safely face. The conservator was appointed, as the statute discloses, to conserve the assets in the hope that the Bank might be rehabilitated. When it became clear to the Comptroller that such was impossible the appointment of a receiver for liquidation followed. ·

[14, █ We think that the procedure laid down by the Bank Conservation Act was a reasonable and appropriate method of protecting the interests of all parties in the emergency and that the administration of the Bank's· assets by the conservator consequently did not deprive the stockholders of their property without due process of law, but on the contrary was a proper expedient for their protection. The validity of legislation authorizing the Comptroller to take possession through a receiver of a national bank which he, in his discretion, deems insolvent, is not open to question. Bushnell v. Leland, 164 U.S. 684, 17 S.Ct. 209, 41 L.Ed. 598. We think that the Bank Conservation Act in authorizing him to appoint a conservator to conserve the assets of a national bank for its creditors, when he deems· such action necessary, is equally valid.

█ It is true that the Comptroller's action in appointing a conservator in the present case did not succeed in effecting the rehabilitation of the Bank, but on the contrary resulted in further loss. This was unfortunate but is not available to the defendants as a defense to the present action. Even at their best, men are subject to the frailties of their human nature. Their judgment is never perfect. Short of Utopia such imperfection will be found in those in whom governmental power is reposed and who administer the laws. Remedial measures undertaken by them with the best of intentions are frequently thwarted by an unforeseen turn in the tide of human affairs· None but a seer could predict the course of future events with certainty. In the homely but expressive phrase, "Hindsight is better than foresight." Consequently, if a remedial measure is undertaken under a valid law, its failure to accomplish its purpose because of an unforeseen change in conditions or because of human errors in its administration, honestly committed, does not constitute a taking of property without due process. Chicago Life Ins. Co. v. Cherry, 244 U.S. 25, 37 S.Ct. 492, 61 L.Ed. 966; Doty v. Love, 295 U.S. 64, 55 S.Ct. 558, 79 L.Ed. 1303, 96 A.L.R. 1438. To hold otherwise would be to paralyze public administration and to render government impotent. It follows that the action of the Comptroller in appointing a conservator in the case before

us, although resulting in loss, did not deprive the defendant's decedent of his property without due process. On the contrary the obligation which the law cast upon him as a stockholder was fixed by the statute, which admits of no exception, and was not affected by the subsequent vicissitudes of the Bank. Barbour v. Thomas, 6 Cir., 86 F.2d 510; Hanley v. Corwin, D.C., 15 F. Supp. 396, affirmed 2 Cir., 89 F. 1008.

Judgment affirmed.