**COOPER v. O'CONNOR, Comptroller of Currency, et al.**

**No. 7219.**

United States Court of Appeals for the District of Columbia.

Argued March 9, 1939.

Decided May 15, 1939.

Rehearing Denied June 14, 1939.

George B. Fraser, Robert H. McNeill, and Kelly Kash, all of Washington, D. C., for appellant.

Brice Clagett and Charles E. Wainwright, both of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and EDGERTON and VINSON, Associate Justices.

## GRONER, C. J.

This is a suit brought by appellant as president, director, and stockholder of Continental Trust Company and of Commercial National Bank, both of Washington City, in his own behalf and in behalf of others similarly situated, against O'Connor, individually and as Comptroller of the Currency; Bryan, formerly receiver of Continental; and Baldwin, formerly receiver of Commercial.

There was no service of process on either Bryan or Baldwin, and the suit was prosecuted against the Comptroller alone.

The bill averred that in 1930 Continental had sold its deposits and goodwill to Commercial and delivered to the latter as security its receivables, including a valuable piece of real estate in Fauquier County, Virginia, known as Manor of Leeds Orchard; that in 1933 upon insolvency of the banks Baldwin was appointed receiver of Commercial and Bryan of Continental; that O'Connor subsequently became Comptroller of the Currency; and that in 1934 the Comptroller and the two receivers agreed to sell and did sell the orchard property for approximately $15,000—"an infinitesimal fraction of its real value". And in an amended bill appellant averred that the orchard property at the time of the sale had a reasonable value in excess of $100,000, which was either known or in the exercise of proper diligence should have been known by the receiver and the Comptroller; that the sale was recommended by the receivers and approved by the Comptroller; but that the receivers' petition to the court for authority to sell was not known to appellant, as the result of which he had no opportunity to object to the sale. The bill does not allege actual fraud, collusion, or bad faith, but does allege that in making the sale the defendants by gross negligence and lack of care failed to obtain a fair or reasonable price; and that they likewise failed to secure appraisals or inventories or to procure valuations from persons engaged in the orchard business in the vicinity of the property; and that as the result of their negligence the price received was so inadequate as to shock the conscience of the court and amount to fraud in law upon appellant's rights and the rights of the banks "for which said defendants were acting as trustees". The bill prayed that the defendants be required to account, and that judgment be rendered against them and each of them for the difference between the sale price and the actual value of the property.

The Comptroller answered the bill and amended bill, and also filed a motion to dismiss on points of law.

Upon argument the court below sustained the motion and dismissed the bill, and this appeal was taken.

Passing by the question whether appellant as a stockholder had a right to bring the suit in his own name (cf. Davis Trust Co. v. Hardee, 66 App.D.C. 168, 85 F.2d 571, 574, 107 A.L.R. 1425), we are of opinion that the action of the court below was correct. Enough has been said to show that the bill alleged the sale was made by the receivers with the recommendation of the Comptroller and the approval of the court of proper jurisdiction. Sec. 5234 of the Revised Statutes[1] authorizes the Comptroller of the Currency, upon the insolvency of a national bank, to appoint a receiver and to require of him such bond and security as he deems proper. Upon his appointment the receiver, under the direction of the Comptroller, is authorized to take possession of the bank and "upon the order of a court of record of competent jurisdiction, [to] sell or compound all bad or doubtful debts, and, on a like order, [to] sell all the real and personal property of

such association, on such terms as the court shall direct". Congress in the enactment of the National Banking Act, 12 U.S.C.A. § 21 et seq., has established a full and complete system for the administration of national banks, including their liquidation in insolvency. Cook County Natl. Bank v. United States, 107 U.S. 445, 2 S.Ct. 561, 27 L.Ed. 537. The receiver is the Comptroller's agent, and like the Comptroller himself, is an officer of the United States. They may be held liable in a suit for accounting only in the event of fraud in the administration of their official duties. Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, 118 A.L.R. 1440; Kendall v. Stokes, 3 How. 87, 11 L.Ed. 506; De Arnaud v. Ainsworth, 24 App.D.C. 167, 5 L.R.A.,N.S., 163; Mellon v. Brewer, 57 App.D.C. 126, 18 F.2d 168, 53 A.L.R. 1519.

 In Baker v. Schofield, 243 U.S. 114, 37 S.Ct. 333, 61 L.Ed. 626, the Supreme Court held a receiver liable where he had secretly purchased the property of the bank through the instrumentality of a third person. But, with this exception, we have been unable to find any case in which either the Comptroller or the receiver of a national bank has been required to account to the creditors of the bank for acts done within the scope of his authority and in the discharge of his official duties. In Wilson v. Awalt, D.C., 2 F.Supp. 465, and in Altman v. McClintock, D.C., 20 F.2d 226, relief was denied in circumstances quite similar to the instant case. In both cases it was held that the receiver of a defunct national bank is not subject to the general equity rule that a trustee is amenable to an accounting to his cestui que trust, and all the cases hold that the receiver is an agent of the government invested by law with administrative authority and power. And this is true in an even greater degree of the Comptroller. Except for actual fraud, he is not liable in an action for damages brought at the instance of a stockholder of the bank on account of his acts in relation to matters committed by law to his control and supervision. This principle we have recently had occasion to apply in a case involving the same parties as in the instant case.[2] Colonel Cooper brought an action against Comptroller O'Connor, the receiver, the United States attorney, and others, to recover damages for malicious prosecution, for having conspired to procure his indictment for violation of the banking

laws, of which he was later acquitted. In that case we held that the Comptroller and the receiver, as officers of the United States, were not liable to respond in damages for acts done by them within the scope of their official duties in the administration of the affairs of the insolvent bank even in a case in which it was charged they had acted with malice. There we said:

"There is a general rule that a ministerial officer who acts wrongfully, although in good faith, is nevertheless liable in a civil action and cannot claim the immunity of the sovereign. There is also a general rule that if any officer—ministerial or otherwise—acts outside the scope of his jurisdiction and without authorization of law, he is liable in an action for damages for injuries suffered by a citizen as a result thereof. See Bradley v. Fisher, 13 Wall. 335, 351, 352, 20 L.Ed. 646. On the contrary, if the act complained of was done within the scope of the officer's duties as defined by law, the policy of the law is that he shall not be subjected to the harassment of civil litigation or be liable for civil damages because of a mistake of fact occurring in the exercise of his judgment or discretion, or because of an erroneous construction and application of the law."

69 App.D.C. at pages 102–103; 99 F.2d at pages 137, 138, 118 A.L.R. 1440.

 The rule grows out of the long recognized fact that the interests of the people require that due protection be accorded to officials of government in respect to their official acts. And so it has been held that a public officer is not liable to an action if he falls into error where the act to be done is not merely a ministerial one but one in relation to which it is his duty to exercise judgment and discretion. Kendall v. Stokes, supra, 3 How. at page 98, 11 L.Ed. 506. Nor is he liable because of the motives with which he discharged an official duty. De Arnaud v. Ainsworth, 24 App.D.C. 167, 178, 5 L.R.A.,N.S., 163.

 In the case under consideration, the Comptroller's connection with the controversy is that, in the exercise of his general supervisory powers, he approved the recommendation of sale. The only other circumstance is the allegation that he knew the "real", "true", or "reasonable" value was far in excess of the amount which he approved. But this alone does

---

[2] Cooper v. O'Connor, supra.

not constitute fraud. There may be many occasions when the best interests of all concerned will be served by approving such a sale. From the facts alleged we cannot say that the Comptroller acted fraudulently. By reference to the exhibits in the record, we find that the receivers filed a petition with the court, setting forth the offer; the fact that efforts had been made to find a purchaser at a better price; the deterioriation of the property; and a statement of their opinion that it was desirable to accept the offer. We also find the authorization and approval of the sale by the court. Since all the steps required by statute in the sale of real estate by receivers of national banks have been complied with, something more than negligence, carelessness, and improvidence, in the respects mentioned, must be alleged before the Comptroller can be held in damages for an act committed by law to his discretion.

Affirmed.