**SUBURBAN TRUST COMPANY,**
Plaintiff,

v.

**NATIONAL BANK OF WESTFIELD,**
Defendant.

Charles R. HOWELL, Commissioner, Department of Banking and Insurance of the State of New Jersey, and Arthur J. Sills, Attorney General of the State of New Jersey, Plaintiffs,

v.

**NATIONAL BANK OF WESTFIELD,**
Defendant.

Civ. A. 837-62, 875-62.

United States District Court
D. New Jersey.

Dec. 10, 1962.

Riker, Danzig, Marsh & Scherer, by William Riker, Newark, N. J., for plaintiff Suburban Trust Co.

Arthur J. Sills, Perth Amboy, N. J., by Alan B. Handler, Newark, N. J., for plaintiffs Howell and Sills.

Dughi & Johnstone, Westfield, N. J., by Irvine B. Johnstone, Jr., Westfield, N. J., for defendant.

WORTENDYKE, District Judge.

The complaint in Docket 837–62 alleges that on October 3, 1961 the New Jersey Commissioner of Banking and Insurance issued to the plaintiff Suburban Trust Company (Suburban), a certificate of authority to establish a branch banking office in the Borough of Mountainside, New Jersey, pursuant to N.J. S.A. 17:9A–20. It is further alleged that Suburban was unable, because of provisions of the Borough's zoning ordinance, to obtain the necessary building permit

to construct and operate the branch banking facility, and that the Commissioner has issued successive extensions of the certificate of authority to include the six-month period commencing October 1, 1962. Suburban further alleges that on October 15, 1962 the Comptroller of the Currency (Comptroller) approved the application of defendant National Bank of Westfield (National) for permission to establish a branch banking office in the Borough of Mountainside, and that on the following day National opened its branch in accordance with that permission. The complaint quotes from 12 U.S.C. § 36 language authorizing the Comptroller to approve the establishment and operation of a branch banking office by a national bank "at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks. * * * " The same pleading also alleges that N.J.S.A. 17:9A–19 permits a State bank to maintain a branch office in the same municipality where its principal office is located, but is prohibited from establishing and maintaining a branch office in any other municipality when another banking institution is already in existence there. Mountainside and Westfield are in the same County (Union), and defendant maintains its principal office in the latter municipality.

Suburban seeks to enjoin National from continuing to operate its branch in Mountainside, and a declaratory judgment that such operation is improper and that the Comptroller's approval thereof is invalid.

Docket C–875–62 is an action which was originally instituted on October 26, 1962 by the Commissioner of the Department of Banking and Insurance of the State of New Jersey (Commissioner or Howell) and the Attorney General of the State of New Jersey (Sills), in the Law Division of the Superior Court of New Jersey, (Docket No. L–3835–62–PW). The complaint therein contains allegations substantially similar to those in C–837–62, and avers that the defendant National "is not 'a receiving bank as defined in Section 132' of N.J.S.A. 17:-9A, nor is it a 'receiving savings bank as defined in Section 205 of N.J.S.A. 17:9A (N.J.S.A. 17:9A–19B[1])' * * and that it is not a 'banking institution in liquidation or in contemplation of liquidation (N.J.S.A. 17:9A–19B[2])." It also alleges that the "Borough of Mountainside, in which defendant has commenced operating a branch office as aforesaid, is not a municipality in which no banking institution has its principal office or branch office (N.J.S.A. 17:9A–19B[3])." Howell and Sills therefore contend that defendant National is without legal authority to continue the operation of its branch in the Borough of Mountainside, and that the only bank which has the legal authority to operate a branch in that Borough is Suburban. They pray for a declaratory judgment that defendant's operation of its branch office in the Borough of Mountainside is illegal and without authority; and that the only bank which has a legal right to establish and operate a branch office in that Borough is Suburban. These plaintiffs seek a temporary and permanent injunction restraining the further operation by National of its branch in the Borough of Mountainside.

With the filing of this (C–875–62) complaint, the plaintiffs noticed a motion for preliminary injunctive relief against the continuance by the defendant National Bank of Westfield of the operation of its branch bank office in the Borough of Mountainside. Thereafter, but before the return date of the notice of that motion, National petitioned for the removal of the cause to this Court, and filed its answer here.

On November 8, 1962 defendant noticed motions in both cases for dismissal of each of the complaints for failure to join the Comptroller of the Currency as

an indispensable party, and, alternatively, upon the ground that plaintiffs lack standing to prosecute the actions. Defendant has also moved to consolidate the two cases. Oral argument on the motions for preliminary injunction and for dismissal was heard by the Court on November 23, 1962. At the conclusion thereof the Court denied preliminary injunctive relief, but reserved decision on the remaining questions. Decision upon the question of whether or not to consolidate the two cases was reserved in order to permit the Court to further consider the question of its jurisdiction in each of the cases.

### JURISDICTION

Plaintiff Suburban predicates jurisdiction in this Court upon the contention that the relief which it seeks arises under Federal law, i. e., the provisions of Title 12 of the United States Code relating to National Banks.

**[1]** 12 U.S.C. § 36(c) permits a national banking association, with the approval of the Comptroller of the Currency, to establish and operate new branches "(2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks." In determining whether the defendant has become entitled to operate a branch in Mountainside it must be ascertained whether or not such is permitted under the New Jersey statute.

In National Bank of Detroit v. Wayne Oakland Bank, 6 Cir.1958, 252 F.2d 537, section 36 of the Federal statute was held to have adopted the provisions and limitations of a statute of the State of Michigan in relation to the right of a National bank to establish a branch within the same County. The opinion in Wayne Oakland says (pp. 540, 541): "The his-

tory of federal legislation regarding branch banking and the statutes applying thereto leave a clear and definite impression that Congress intended, with respect to the location of branches, that a national bank should have no greater rights than it would if it were a state bank, and that a national bank was to be permitted to establish and operate a branch in a state only at such a point as it could, by express provisions of a state statute, establish and operate a branch if it were then a state bank. * * * From the above, the conclusion follows that (1) the National Bank of Detroit could not, even with the approval of the Comptroller of the Currency, establish a branch in Troy, since the establishment of such a branch would not have been authorized, at the time, to state banks by the laws of Michigan by language specifically granting such authorizations affirmatively; and (2) that, since the branch of The Wayne Oakland Bank was established in Troy on April 2, 1956, no other branch could be established subsequent to that date by any other state or national bank." The intimacy of the relationship between and interdependency of the Federal and State statutes is emphasized by the Court in Wayne Oakland (at p. 543) in the following language: "The express provisions of the federal statute governing the establishment and operation of national banks look to what has been done by the state; and the express provisions of the state statute look to what has been done by the federal government." In upholding the right of the State bank to relief from the competition of the branch of the National bank threatened by the Comptroller's approval of the National bank's application for authorization to establish the branch, the Court found that the State bank was (p. 544) "faced with invasion of property rights, and injury from a competition which was prohibited by the federal statutes subjecting national banks to the same rules of law as cover state banks," and that the question whether the rights of the State bank were infringed by unlawful ac-

tion of the Comptroller or by assertion of unauthorized Federal administrative power presented a controversy which the State bank was entitled to have adjudicated. The opinion quoted from was rendered upon a petition for rehearing after the Court's affirmance, per curiam (6 Cir., 249 F.2d 445), of the District Court's (unreported) judgment in favor of the State bank.

 Whether jurisdiction exists must be determined from the allegations of the complaint. A case is considered to arise under the laws of the United States if its correct decision depends upon the construction of a Federal statute, or when rights claimed by one party may be defeated by one construction and sustained by the opposite construction. Gully v. First National Bank, 1936, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Shelby County, Tenn. v. Fairway Homes, Inc., 6 Cir. 1961, 285 F.2d 617. What Suburban seeks in its action is an adjudication that the defendant National bank may NOT legally operate a branch in Mountainside because it is precluded from so doing by the provisions of N.J. S.A. 17:9A–19, which are incorporated by reference in 12 U.S.C. § 36(c).

The relevant (New Jersey) statutory language is as follows (N.J.S.A. 17:9A–19 subd. B):

"B. No bank or savings bank shall establish or maintain a branch office which is located outside the municipality in which it maintains its principal office; except that a bank or savings bank may establish and maintain a branch office or offices anywhere in the same county as that in which it maintains its principal office * * *

"(3) When each proposed branch will be established in a municipality in which no banking institution has its principal office or a branch office."

Suburban here alleges that National is prohibited from establishing and maintaining its branch in another municipality when another banking institution has a branch there. It is contended that the approval which Suburban has secured from the Commissioner, even though no branch has yet been physically constructed or placed in operation thereunder, in effect prohibits the operation of a branch by National in the same municipality, even though such operation has been approved by the Comptroller. Support for such a contention requires an interpretation of the meaning of the New Jersey statutory phraseology which has been incorporated by reference in the Federal statute. If the Court construes the phrase "in which no banking institution has * * * a branch office" so as to synonymize it with the phrase "in which no banking institution has been authorized to establish and maintain a branch office", and finds that Suburban has been so authorized, plaintiffs would be entitled to the injunctive relief which they seek. On the other hand, if Suburban does not "have" a branch office in Mountainside, National would be entitled to continue to operate the branch in that municipality which it has already established with the approval of the Comptroller.

 A federally chartered bank exists solely by virtue of federal law. Smith v. Witherow, 3 Cir.1939, 102 F.2d 638, 641; David v. Elmira Savings Bank, 161 U.S. 275; Sneeden v. City of Marion, 7 Cir.1933, 64 F.2d 721.

 "Branch banking (banking operations at other than the principal office) by national banks is regulated by state law because Congress has so provided. That is, Congress has adopted state law on the establishment of branches by state banks as the measuring stick for the establishment of branches by national banks." Commercial State Bank of Roseville v. Gidney, D.C.D.C.1959, 174 F.Supp. 770, 774, affd. 1960, 108 U.S. App.D.C. 37, 278 F.2d 871.

 I agree with the contention of plaintiffs in the cases at bar that this Court has jurisdiction over the subject matter of the cases under consideration because they arise under a Federal statute, i. e., 12 U.S.C. § 36(c); and accept

jurisdiction over the cases in accordance with 28 U.S.C. § 1331(a).

■ Having recognized jurisdiction in both cases, they will be consolidated, because both involve common questions of law and fact. F.R.Civ.P. 42(a).

## FAILURE TO JOIN THE COMPTROLLER OF THE CURRENCY AS A PARTY

■ Suburban prays that this Court adjudge that the operation of defendant's banking facility in Mountainside "is improper and any order or approval permitting the same is invalid." The reference in the quoted prayer to an approval of the defendant's banking activities in Mountainside relates to the allegation in the complaint that the Comptroller of the Currency approved defendant's application for permission to establish a branch banking office in Mountainside. One whose conduct is drawn in question, whether he be an individual or an official, *may* be made a party to the litigation. F.R.C.P. 21.

■ The plaintiffs contend that the Comptroller's approval lacks statutory support because the language of New Jersey statute precludes the opening of a branch in Mountainside by National. The Comptroller clearly has a visitorial and supervisory function over National banks. His approval of certain contemplated acts by such banks is expressly required. However, the limitations on branch banking by National banks are statutory, and if they stand in the way of opening a particular branch, the approval of the Comptroller cannot override the statute. Because, therefore, the question presented in the present cases is the single one of whether the National bank was entitled to establish and operate a branch bank in Mountainside, even with the approval of the Comptroller, the Comptroller is clearly not an indispensable party, because the fact of his approval becomes irrelevant and immaterial to the question presented. Johnson v. Kirkland, 5 Cir.1961, 290 F.2d 440, 445.

The Comptroller's interest is not such that a final decree cannot be entered without affecting him. See State of Washington v. United States, 9 Cir.1936, 87 F.2d 421.

■ Having decided that the Comptroller is not an indispensable party to either of the cases at bar, the jurisdiction of the Court is not affected by his nonjoinder. Cf. Martucci v. Mayer, 3 Cir.1954, 210 F.2d 259. Neither case before me seeks to require the Comptroller to take any action. See Williams v. Fanning, 1947, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95; Colorado v. Toll, 1925, 268 U.S. 228, 45 S.Ct. 505, 69 L. Ed. 927. It is unnecessary for me, therefore, to interpret P.L. 87–748, 76 Stat. 744, approved October 5, 1962, amending 28 U.S.C. § 1391, and supplementing Chapter 85 of the same Title.

## PLAINTIFFS' STANDING TO SUE

■ Defendant seeks a dismissal of both cases upon the alternative ground that plaintiffs lack standing to prosecute them. Defendant takes the position, expressed in its brief, that "Inherent in all the sections of the National Banking Act is the concept that provisions of that Act are to be enforced by the Comptroller and that his powers in this regard are broad and exclusive. * * Therefore, Congress has entrusted its administration to the Comptroller and his determinations in such administration have been consistently held to be immune from collateral attack by third parties in the absence of fraud." We agree with defendant that the courts may not review discretionary action of the Comptroller. Smith v. Witherow, supra. However, it is not true that he may act contrary to the law as the complaints in the cases at bar assert, and not have such action reviewable by the courts.

■ "A national bank has only the power expressly given to it and such incidental powers as are necessary to carry on the business of the powers expressly given. * * * Courts have

nothing to do with determining the policy which national banks should pursue. That is a question for the Comptroller of the Currency and the banks themselves so long as that policy is not unlawful and does not offend against public policy. But when it is unlawful and contrary to public policy, then the courts have jurisdiction. * * * " Baltimore & Ohio Railroad Co. v. Smith, 3 Cir.1932, 56 F.2d 799, 802.

■ Here the plaintiffs are proceeding against National, not against the Comptroller, upon the theory that National may not operate its branch, despite the Comptroller's approval. Although the situation here differs from that in Commercial State Bank of Roseville v. Gidney, supra, in which the plaintiff State bank sought to enjoin the Comptroller's (not already issued) approval of a National bank's branch, nevertheless the court there held (p. 780 of 174 F.Supp.) that because "any new branch in (the municipality) would have to draw its business from the surrounding communities which these plaintiffs already service," the plaintiffs had standing to prosecute the action. In the present instance the plaintiff bank is not actually in operation, but it has sufficient property interest in the certificate of authorization granted to it, to entitle it to seek relief in this Court.

This Court finds that it has jurisdiction of the parties to both of these consolidated actions. It concludes that it has jurisdiction of the cause of action alleged in each complaint under 28 U.S.C. § 1331(a). The plaintiffs have standing to prosecute the actions [1], and the Comptroller of the Currency is not an indispensable party for the complete adjudication of the critical issue presented in each case, i. e., has defendant National a right to continue to operate a branch banking office in the Borough of Mountainside, New Jersey. Accordingly the

[1]. National does not contend that either Howell or Sills lacks such an interest as affords him a standing to sue. There-

motions to dismiss each complaint are denied.

An order may be presented according with the views expressed in the foregoing opinion.

fore, I express no opinion respecting this question.