In the Matter of the Liquidation of
**FRANKLIN NATIONAL BANK, a
National Banking Association.**

No. 74–C–1434.

United States District Court,
E. D. New York.

Oct. 8, 1974.

Hughes, Hubbard & Reed, New York City, for FDIC as Receiver of Franklin National Bank by Powell Pierpoint, Amalya L. Kearse, New York City, of counsel.

Edward Bransilver, Myers N. Fisher, Washington, D. C., Gen. Counsel to FDIC.

Cadwalader, Wickersham & Taft, New York City, Gen. Counsel to Franklin National Bank and Franklin New York Corp. by Paula Van Meter, New York City, of counsel.

## MEMORANDUM OPINION

JUDD, District Judge.

The court has been asked to give *ex parte* approval to transactions involving billions of dollars and at least two federal agencies and two large banks.

Although the court has determined that such action is proper, approval has not been given without careful consideration during the interval of more than three weeks since the first draft of the basic papers was submitted to the court for consideration.

The matter was first presented to the writer while he was sitting in Miscellaneous Part in September, and has been assigned to him for action now by designation of Acting Chief Judge John F. Dooling, Jr. pursuant to the "Plan for Prompt Disposition of Protracted, Difficult or Widely Publicized Cases" adopted by Order of this Court dated December 22, 1971.

### Facts

The affairs of Franklin National Bank (Franklin) have been the subject of high-level consideration by the Comptroller of the Currency, the Federal Deposit Insurance Corporation (FDIC), and the Federal Reserve Bank of New York, *among other government agencies,* since early May 1974. At that time the announcement of substantial losses in Franklin's foreign exchange department triggered a dramatic decline in its deposits and in its ability to obtain short-term borrowed funds to maintain its liquidity. Advances by the Federal Reserve Bank have enabled Franklin to continue in operation, but these advances had risen from about $135 million on May 10, 1974 to a total of $1.125 billion by May 22, 1974, and now total approximately $1.75 billion.

FDIC and the Comptroller of the Currency have explored various possibilities for improving the financial situation of Franklin, including a proposal from Franklin's new management. The affidavits filed with the petition show that the Comptroller consulted more than two dozen of the largest banks in the United States, and that FDIC also consulted certain major foreign banks concerning various plans to aid Franklin. A plan of liquidation which was thereafter developed by FDIC contemplated sale of some but not all of Franklin's assets after solicitation of bids on the basis of a proposed purchase and assumption agreement.

The Federal Reserve Bank of New York informed the Comptroller of the Currency by letter on October 7, 1974 that

. . . at the present time, we see virtually no possibility that Franklin can survive for long as an independent institution . . . In all of the circumstances, and with the FDIC plan available, we do not believe that it would be in the public interest for this Bank to continue its program of credit assistance to Franklin.

The plan developed by FDIC and referred to in the letter of the Federal Reserve Bank of New York contemplated that FDIC would be appointed receiver and would sell certain assets, to be selected by the purchasing bank, in an amount equal to Franklin's deposit liabilities at the time of the receivership (about $1.5 billion at August 30, 1974), minus the amount of a premium to be paid by the purchasing bank. The remaining assets would be retained by FDIC, to meet Franklin's outstanding obligation to the Federal Reserve Bank

of New York; any surplus after the payment of liquidating expenses will be returned to the stockholders of Franklin. Apart from preferred stockholders, all of Franklin's stock is owned by Franklin New York Corporation.

The FDIC in its corporate capacity has agreed to purchase from the receiver (also FDIC) all assets not purchased by the assuming Bank and to assume the Bank's indebtedness to the Federal Reserve Bank of New York, and repay it out of liquidations and collections to the extent possible, but within three years in any event. Other details set forth in the agreements need not be discussed in this Memorandum Opinion, except to mention that Franklin's trust business might be acquired by a separate institution.

The Comptroller of the Currency on October 8, 1974 at 3:00 p. m. certified that he was satisfied that Franklin "is insolvent, and unable to meet the demands of its depositors and unable to pay its just and legal debts." He thereupon appointed FDIC as receiver of Franklin.

The papers before the court emphasize the need for prompt action, in that the going concern value of Franklin would be lost if its 104 domestic banking offices do not open on the morning of October 9, 1974, and that the purchasing bank would then have the right to withdraw its bid, with the resultant loss of the premium payable to FDIC under the plan.

### The Law

The Comptroller of the Currency acted pursuant to 12 U.S.C. § 191 in certifying that Franklin is insolvent, and his appointment of Federal Deposit Insurance Corporation as receiver was required by 12 U.S.C. § 1821(c).

1. The action of the Comptroller in making a finding of insolvency and appointing a receiver has been frequently described as discretionary and not subject to judicial review. B. V. Emery & Co. v. Wilkinson, 72 F.2d 10 (10th Cir. 1934); Wannamaker v. Edisto National Bank, 62 F.2d 696 (4th Cir. 1933); Liberty National Bank v. McIntosh, 16 F.2d 906 (4th Cir. 1927), cert. dismissed, 273 U.S. 769, 783, 47 S.Ct. 571, 71 L.Ed. 890; Munro v. Post, 23 F.Supp. 308 (E.D.N.Y. 1938), aff'd, 102 F.2d 686 (2d Cir. 1939). A number of cases have said that the judgment is final unless it appears by convincing proof that the Comptroller's action was arbitrary and made in bad faith. United States Savings Bank v. Morgenthau, 66 App.D.C. 234, 85 F.2d 811 (1936), cert. denied, 299 U.S. 605, 57 S.Ct. 232, 81 L.Ed. 446, rehearing denied, 301 U.S. 666, 57 S.Ct. 793, 81 L.Ed. 1365 (1937); Liberty National Bank v. McIntosh, *supra,* 16 F.2d at 909. *Compare* Schram v. Schwartz, 68 F.2d 699, 701 (2d Cir. 1934) (conclusiveness of Comptroller's determination of need for an assessment against stockholders).

The special character of banks, and the delicate problems involved in preserving credit, justify denial of the judicial hearing which would be essential in other situations. Slay v. Berry, 27 Mich.App. 271, 183 N.W.2d 436, 452–453 (1970), quoting from Fahey v. Mallonee, 332 U.S. 245, 253, 67 S.Ct. 1552, 1556, 91 L.Ed. 2030 (1947).

Insolvency may result from inability of a bank to meet its obligations as they mature, as distinguished from the theoretical state of its balance sheet. Smith v. Witherow, 102 F.2d 638 (3d Cir. 1939). *Accord,* In re Receivership of Wellsville National Bank, Pa., 407 F.2d 223, 226 n. 5 (3d Cir.), cert. denied, 396 U.S. 832, 90 S.Ct. 85, 24 L.Ed.2d 82 (1969). Since it is the responsibility of a bank to pay most deposits on demand, the fact that it has assets which ultimately may be worth as much as the deposits does not establish that it could keep its doors open.

The affidavit of the Comptroller contains an analysis of Franklin's financial condition which supports his finding of insolvency on both grounds, that it can-

not continue to meet the demands of its depositors and that it has no real equity capital.

■ 2. The receiver of a national bank is given authority to sell the assets by 12 U.S.C. § 192, which specifies that

Such receiver . . . upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct; . . . .

It has been held that the approval of a sale under Section 192, and the ratification of its terms, represent a purely administrative act by the court, "[the] condition precedent to the congressionally granted executive power to sell." Mitchell v. Joseph, 117 F.2d 253, 255 (7th Cir. 1941). *Accord,* Hulse v. Argetsinger, 18 F.2d 944, 945 (2d Cir. 1927); United States National Bank v. Pole, 2 F.Supp. 153 (D.C.Or.1932); Fifer v. Williams, 5 F.2d 286 (9th Cir. 1925); and Dugger v. Cox, 110 F.2d 834, 836 (6th Cir. 1938), where the court stated,

The proceeding in Court for the approval of a sale is ex parte.

The Statute does not contemplate notice to those interested and there are none of the essentials of a controversy, the proceedings lacking judicial characteristics.

The functions of the court were recently canvassed by Judge Palmieri in In re Home National Bank of Ellenville, N. Y., 147 F.Supp. 389 (S.D.N.Y.1956), a case in which the writer had a part. Although questioning the grant of administrative powers to a federal judge, he held that a century of judicial and congressional authority was binding, and he approved the sale of assets submitted in that case.

Here the papers make a *prima facie* showing that the proposed sale of assets and the related agreements are not arbitrary, but are the best solution to a serious and delicate problem. It appears that FDIC has carefully canvassed the market, has determined that the proposed sale of a substantial portion of the assets is the most desirable method of resolving the Bank's problems, and has invited bids from at least four qualified banks.

The proposed agreements will protect the depositors of the Bank against loss. The Federal Reserve Bank of New York, which has granted massive assistance to Franklin for several months, is also protected against loss. The rights of creditors remain against the receiver and the assuming Bank, and do not create any obstacle to the approval of the agreement.

The reserve fund of the FDIC will bear substantial risk, but this seems to be authorized as a means of orderly liquidation. 12 U.S.C. § 1823(e).

The rights of the stockholders of the Bank and its holding company are of course affected. In a practical sense they may derive some protection from the substantial premium over the book value of assets which the purchasing Bank has agreed to pay to FDIC, and which will be part of the assets computed in determining whether there is any surplus for stockholders after the liquidation is completed. This may not, however, deter stockholders from feeling that they are hurt. However, under the cases cited above, the stockholders have no right to challenge either the determination of involvency or the sale of assets. Any other rights that survive need not be determined at this time.

Any meaningful notice and hearing would defeat the expedition which is necessary in order to preserve the basic values of an insolvent bank. Both precedent and practicality therefore support the petition for *ex parte* approval.

The Order submitted by FDIC has been signed this day.