## COOPER v. WOODIN, Secretary of the Treasury, et al.

### No. 6202.

United States Court of Appeals for the District of Columbia.

Argued May 17, 1934.

Decided June 18, 1934.

W. Bissell Thomas and J. W. Staggers, both of Washington, D. C., for appellant.

Geo. P. Barse, Charles E. Wainwright, and Geo. W. Smith, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

MARTIN, Chief Justice.

This appeal relates to a refusal by the Comptroller of the Currency to approve a plan presented by appellant for the reorganization and reopening of a District of Columbia bank, under section 207 of the Bank Conservation Act (48 Stat. 2), as amended (12 USCA § 207).

The bank in question is the United States Savings Bank, a West Virginia corporation, which was engaged in a general banking business in the District of Columbia for some years prior to the Presidential Proclamation of March 6, 1933 (12 USCA § 95 note), providing for the bank holiday. The bank was under the jurisdiction and supervision of the Comptroller of the Currency by virtue of sections 298 and 299, title 5, D. C. Code of 1929.

On March 17, 1933, the Acting Comptroller of the Currency decided that it was not safe to license the bank to reopen and attempt to carry on an unrestricted banking business, and consequently he appointed a conservator for the bank under the provisions of section 203 of the Bank Conservation Act of March 9, 1933 (U. S. Code, tit. 12, § 203 [12 USCA § 203]).

The appellant, Wade H. Cooper, at the time in question, was the president of the bank, owning a majority of its capital stock, and was also a depositor, and on September 2, 1933, he began the present case by filing a bill in equity in the Supreme Court of the District of Columbia against the Secretary of the Treasury, the Comptroller of the Currency, and various other officials of the Treasury Department. The plaintiff in his bill of

complaint alleged that the defendants were about to merge the savings bank with a new bank named the Hamilton Bank, then in process of organization. He charged that the proceedings of the Treasury officers in order to accomplish that purpose were contrary to the lawful rights of the stockholders and creditors of the savings Bank, and he prayed for a decree of injunction to prevent the defendants from carrying out such plan, and also prayed that they be enjoined from interfering with any attempt on the part of the plaintiff to enter into negotiations with the bank's depositors for the purpose of reorganizing and reopening the bank. Issue was taken by the defendants, and the case came on for trial, in the course of which the trial justice announced from the bench that he would not approve of the sale of the assets of the savings bank to the Hamilton Bank under the conditions then prevailing. The case, however, was continued for further hearing in respect to any plan of reorganization of the savings bank which might be proposed by the appellant.

Thereupon the appellant submitted a plan for the reorganization of the bank to the Comptroller of the Currency for his consideration under section 207 of the Bank Conservation Act, supra, wherein it was proposed by appellant that the depositors and creditors of the bank should waive and release the bank from payment of a certain proportion of their claims, and that certain unacceptable assets should be transferred from the bank and be trusteed for the benefit of the waiving depositors and creditors, that a distribution of the remaining assets should be paid to the depositors and creditors upon their unreleased claims, and the bank be permitted to resume operations under such plan.

The Comptroller of the Currency refused to approve the plan thus proposed, whereupon on September 30, 1933, appellant filed a second supplemental bill of complaint herein setting out his plan of reorganization with certain modifications, and praying that the defendants be required by mandatory injunction to approve of appellant's plan for the reopening of the bank.

The defendants, including the Comptroller of the Currency, filed their respective answers to the second supplemental bill of complaint denying appellant's right to a mandatory injunction as sought by him.

Testimony was heard upon the questions raised by the pleadings, and upon a consideration thereof the court denied the prayer of the bill and dismissed the same, with costs; whereupon the present appeal was taken.

The present question, accordingly, is whether the trial court erred in refusing to compel the Comptroller of the Currency by writ of mandamus to approve appellant's proposed plan for reopening the savings bank, under the agreement submitted by appellant.

Upon a review of the record we think the Comptroller was justified in refusing to approve of the plan proposed by the appellant, and that the ruling of the trial court to this effect was not error.

The plan of reorganization proposed by appellant contemplated a division of the assets of the closed bank into two classes. The first class was to include only the prime or so-called acceptable assets of the bank. The second class was to consist of the remaining or unacceptable assets. The first-class assets were to be transferred to the reorganized bank. The depositors and other unsecured creditors of the closed bank were thereupon to waive 35 per cent. of their claims against the bank and were to become creditors of the reorganized bank for the remaining 65 per cent. of their claims, and the bank as so reorganized should be reopened for business. The second-class assets were to be trusteed for the repayment of the 35 per cent. of the claims waived as aforesaid. It was provided also that all dividends accruing upon the stock of the reorganized bank for five years following the date of the change should be transferred to the trusteed fund, and, if at the end of the five-year period the 35 per cent. of claims were not finally paid, the stockholders of the reorganized bank should be subject to an assessment of $100 per share to be available for the payment of such claims.

The Comptroller of the Currency objected to this plan because of the fact that the first-class assets to be transferred to the reorganized bank would be sufficient to pay the indebtedness assumed by that bank, and in addition would provide a fund of more than $100,000, which would be held as paid-up capital stock in the reorganized bank by the stockholders of the closed bank without cost to them. By this means the stockholders of the closed bank would not be called upon primarily to make good any part of the deficiency, and the entire loss would be borne by the creditors while the stockholders retained their stock unimpaired. The Comptroller held that the loss should fall primarily upon the stockholders and not upon the creditors. It is true that by this plan the dividends upon the stock for five years may be appropriated to the payment of the waived claims and that at the end of the five-year period the stock-

holders may be called upon to make good such claims, but the Comptroller considered that such unsecured obligations to be performed at a future time could not be accepted as proper considerations in reaching a present settlement.

It appears that in October, 1933, while the appellant's project was under consideration, an examination was made of the assets of the closed bank by national bank examiners appointed by the Comptroller. The examination disclosed the total liability to creditors (after deducting capital structure) to be $1,953,467.92, and that, after the payment of accounts not subject to waiver, such as secured claims, etc., the liability to general or unsecured creditors was $1,644,532.54. The report disclosed that there is a deficiency in the acceptable assets of $416,165.67 in the amount required to meet the total liability of $1,953,467.92. The bank, accordingly, was found to be insolvent in so far as acceptable assets are concerned in the sum of $416,165.67. Upon the basis of a waiver of 35 per cent., the depositors would contribute $575,586.38, which would amount to a contribution of $159,420.71 toward the capital structure of the reorganized bank above the sum necessary to restore the bank to solvency. In other words, it would be necessary for the depositors to waive only $416,165.67, or 25.3 per cent. of their claims in order to restore the bank to solvency, and the proposed waiver of 35 per cent. would be excessive by approximately 10 per cent., or $159,420.71, and therefore the depositors to the extent of $159,420.71 would be taking over the obligations of the stockholders to rebuild the capital structure.

The Comptroller reported that he considered the plan to be inequitable to the depositors, and not in the public interest for the depositors to waive more than 25.3 per cent. as aforesaid, and that the funds necessary beyond that point to re-establish a satisfactory capital structure should be furnished by the stockholders, at least to the amount estimated to be collectible by assessment.

It is provided by section 207 of the Bank Conservation Act, supra, that in any reorganization of any bank under a plan of a kind which, under existing law, requires the consent, as the case may be, (a) of depositors and other creditors or (b) of stockholders or (c) of both depositors and other creditors and stockholders, such reorganization shall become effective only (1) when the Comptroller of the Currency shall be satisfied that the plan of reorganization is fair and equitable as to all depositors, other creditors, and stockholders and is in the public interest and shall have approved the plan subject to such conditions, restrictions, and limitations as he may prescribe. And, in any reorganization which shall have been approved and shall have become effective as provided therein, all depositors and other creditors and stockholders of such bank, whether or not they shall have consented to such plan of reorganization, shall be fully and in all respects subject to and bound by its provisions, and claims of all depositors shall be treated as if they had consented to such plan of reorganization.

Upon a review of the record we are convinced that the Comptroller of the Currency was acting within his statutory authority in holding that the plan of reorganization proposed by appellant was not fair and equitable as to the depositors and other creditors of the bank, and is not in the public interest, and that the Comptroller was right in refusing to adopt appellant's proposed plan, and consequently that his action in this behalf was not arbitrary or capricious.

In view of our opinion upon the unmistakable facts of the case and the plain provisions of the statute we find it unnecessary to refer to the many court decisions and other authorities cited by the respective parties.

The decision of the lower court is affirmed, with costs.