**UNITED STATES SAV. BANK et al. v. MORGENTHAU, Secretary of the Treasury, et al.***

No. 6605.

United States Court of Appeals for the District of Columbia.

Decided July 20, 1936.

*Writ of certiorari denied 57 S. Ct. 232, 81 L. Ed. —.

812

Philip H. Marcum and Thomas E. Rhodes, both of Washington, D. C., for appellants.

George P. Barse, J. Bruce Kremer, George B. Springston, and Herbert M. Bingham, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

On June 28, 1934 the appellants, as plaintiffs, filed suit in the Supreme Court of the District of Columbia against the appellees as defendants, praying for a decree to terminate a receivership of the appellant bank and for the return of its assets to the original officers and stockholders of the bank.

The plaintiffs in their bill of complaint alleged in substance the following facts:

That the appellant, the United States Savings Bank, hereinafter called the Bank, was a banking corporation of the state of West Virginia which for many years prior to the date of the "bank moratorium" maintained a banking house and conducted a banking business in the city of Washington, D. C.; and that the appellant Wade H. Cooper was the owner of 56 per cent. of the capital stock of the Bank, and for many years was its president and chief executive.

That the appellee Henry Morgenthau, Jr., is Secretary of the Treasury of the United States; that the appellee J. F. T. O'Connor is Comptroller of the Currency of the United States; and that the appellee Carter B. Keene since the month of February, 1934, has been the receiver of the bank, appointed thereto by the appellee O'Connor, and is now in possession and control of all of the assets of the Bank and occupies the Bank's premises as his place of business.

That prior to the middle of the year 1932 the Bank was prosperous, having a capital stock of $100,000 and surplus approximating $250,000 and paying dividends on the capital stock at the rate of 30 to 40 per cent. per annum; that the shares of stock were selling on the public market at a considerable premium; that at the date of the so-called moratorium proclamation, to wit, March 6, 1933, the affairs of the Bank were less prosperous, and for a short time the salability of its assets was so depressed that subsequent to the 1st day of February, 1933, and for several months thereafter, they might not have realized

sufficient cash to pay all of the indebtedness of the Bank and the amount of the capital stock, yet at no time was the real value thereof so low that it did not equal the indebtedness of the Bank and the amount of the capital stock, and that after March 1, 1934, the assets of the Bank had increased in value and the Bank had become wholly solvent, fully able to meet all of·its creditors' demands, including depositors, and had to its credit over and above its liabilities assets in excess of its capital stock.

That following the bank moratorium the Comptroller of the Currency refused a license to the Bank to reopen for business, and shortly thereafter undertook and attempted to constrain the Bank to join with other banks in the organization of a new bank to be called the Hamilton National Bank which the plaintiffs refused to join, and that plaintiffs thereupon instituted proceedings in the Supreme Court of the District of Columbia against *William H. Woodin*, then Secretary of the Treasury of the United States, and the defendant O'Connor to prevent them from consolidating this Bank with the Hamilton National Bank, this proceeding being equity cause No. 56143 upon the court's docket; that the court sustained the plaintiff's claim; and that its order to that effect was affirmed by this court, of all of which the court was requested to take judicial notice. (Cooper v. Woodin, 63 App.D.C. 311, 72 F.(2d) 179). It is disclosed by the record in that case that Cooper had offered a plan for the reopening of the Bank, purporting to make available to the depositors immediately 65 per cent. of the total amount of their deposits, with a certain prospect of a future entire payment thereof which the Comptroller refused.

That the plaintiff Cooper, as president of the Bank on or about May 28, 1934, applied to the Comptroller for a statement of the condition of the Bank, but was refused any information with respect thereto, and was denied·access to the books of the Bank, and the plaintiffs alleged that while the suit in equity, No. 56143, was pending, and prior to the appointment of the defendant Keene as receiver of the Bank, the assets of the Bank had so far increased in value and their liquidity had so increased that from the date of the appointment of Keene as receiver and up to the present time the Bank has been and is wholly solvent, and able to meet any normal demands of creditors or depositors, and that, if there is any

impairment of the capital stock, the plaintiff Cooper and other stockholders of the Bank are able and willing to supply any impairment which may be shown to exist in the capital stock of the Bank; that the appointment of the receiver in the month of February, 1934, during the pendency of the equity case (56143) in the lower court as aforesaid, by the Comptroller of the Currency, was without warrant of law, in contravention of the purport and intent of the Bank Conservation Act, and was made by the defendant O'Connor arbitrarily, wantonly, and maliciously in an attempt to utterly ruin and destroy the Bank and the plaintiff Cooper; that the action of the defendants O'Connor and Keene was made without notice to the Bank at a time when the Bank was "perfectly solvent," and the appointment was made "arbitrarily, wantonly and maliciously, not in good faith and for the purpose of carrying out the laws of the United States, but for the sole purpose of damaging these plaintiffs and was without warrant of law."

The plaintiffs therefore prayed that a temporary injunction issue against the defendants, enjoining and restraining them during the pendency of this cause from maintaining the defendant Keene as receiver of the Bank, and from withholding from the officers, directors, and stockholders of the Bank possession of its banking house and assets; that on a final hearing hereof a decree be entered restoring to the officers, directors, and stockholders of the plaintiff Bank its banking house and all of its assets, discharging the defendant Keene as receiver of any of the assets or property of the Bank, and enjoining and re-, straining all of the defendants from interfering in any way with the operation of the Bank by its officers, directors, and stockholders; that, if on final hearing it should develop that for any reason the capital stock of the Bank is impaired, then and in that event the stockholders of the Bank be afforded an opportunity of supplying said impairment; that the temporary injunction heretofore prayed be, on a final hearing, made permanent; and for other and further relief.

On June 18, 1935, the plaintiffs below applied for leave to file a supplemental bill in the case. This application was denied under exceptions. The defendants below first filed an answer to the bill, but subsequently filed a motion to dismiss it upon a claim that it was bad in substance. The lower court sustained this motion and dis-

missed the bill. The present appeal was then taken.

In our opinion, the lower court was right in dismissing the bill of the plaintiffs for want of substance.

In section 298, tit. 5, D.C.Code (1929), it is provided in relation to banks organized under the authority of any state and doing business in the District of Columbia that the Comptroller of the Currency "shall have power, when in his opinion it is necessary, to take possession of any such bank or company, for the reasons and in the manner and to the same extent as are provided in the laws of the United States with respect to national banks."

In section 191, tit. 12 U.S.C.A., it is provided that "whenever the comptroller shall become satisfied of the insolvency of a national banking association, he may, after due examination of its affairs, * * * appoint a receiver who shall proceed to close up such association."

■ In the present case the Comptroller determined that the Bank was insolvent and appointed a receiver as aforesaid under the statute to wind up its affairs. The question of solvency or insolvency of the Bank depends upon the estimate of appraisal of the value of its securities. This is a matter of judgment and discretion. It is conceded by the appellants that prior to March 6, 1933, the "salability" and "liquidity" of the Bank's assets were such that, if the Bank were closed out at that time, its assets were not sufficient to pay its debts. The Bank then was in the hands of a conservator, and it was properly denied the privilege of reopening at that time. It is claimed as a matter of fact by the appellants that after March 1934, the assets of the Bank had increased in value to an extent which rendered the Bank solvent. In February of the same year, however, the receiver had been appointed upon a finding and determination by the Comptroller that the Bank was insolvent. It is plain that the difference between the respective parties regarding the solvency or insolvency of the Bank rests upon an estimate of the value of the securities held and property owned by the Bank during this period. The Comptroller determined that the Bank was yet insolvent, whereas the president of the Bank contends that it had regained its solvency. This mere contradiction, standing alone, compels the court to accept the official determination of the Comptroller. It has been held by a long array of authorities that, where the Comptroller of the Currency has held a bank to be insolvent and has appointed a receiver for it, the court will not substitute its judgment for the judgment of the Comptroller, unless it appears by convincing proof that the Comptroller's action is plainly arbitrary, and made in bad faith.

■ In the present case no facts are averred which tend to show that the action of the Comptroller was arbitrary, or made in bad faith. The controversy related simply to the estimate entertained by the Comptroller concerning the value of the securities belonging to the Bank. The presumption of correctness attending such a determination cannot be overcome by the mere assertion that it was "arbitrary, wanton, and malicious." It is true that the motion sustained by the lower court for a dismissal of the plaintiffs' bill concedes the truth of all facts which are properly pleaded in the bill itself. But in this case no facts are pleaded except a difference in appraisal of the assets of the Bank made by the respective parties, and these are not sufficient to overcome the presumption which the law attaches to the official determination reported by the Comptroller of the Currency in the exercise of his official duties.

In Washington Nat. Bank of Tacoma v. Eckels (C.C.) 57 F. 870, 872, an attempt was made by a bill in equity to restrain the Comptroller from appointing a receiver for a bank in liquidation. The court said:

"The decision of the comptroller of the currency in this case, that the bank is insolvent, is to be taken as a finality. It is equivalent to the fact, whether the bank is really insolvent or not, so far as to authorize the exercise of the comptroller's power to put the bank in the hands of a receiver."

In the case of Liberty Nat. Bank v. McIntosh (C.C.A.4th) 16 F.(2d) 906, 908, the court said:

"In a word, whenever he [comptroller] becomes, after due examination of its affairs, satisfied of the insolvency of a national banking association, he may appoint a receiver, who shall proceed to close up the business of such association, and enforce the personal liability against shareholders as prescribed by law. This act can have but one meaning, and having regard to the importance of its subject-matter, and the delicate duties to be performed, posi-

tive and quick action, when found necessary, is contemplated looking to the winding up and closing of insolvent national banks. The convenience of large numbers of the public perhaps affected by what is to be done, and the serious disturbance of business conditions liable to be involved, would seem to justify and warrant this grant of power to an official of the dignity and importance of the Comptroller of the Currency. The third section of the amended act gives further color to this view, in that it provides that when creditors, through the Comptroller's receiver, have been paid in full, and the bank's circulating notes redeemed, the institution shall be returned to the control of its stockholders."

In the case of Wannamaker v. Edisto Nat. Bank (C.C.A.4th) 62 F.(2d) 696, 700, the court said:

"The attempt in the bill to vacate the appointment of the receiver made by the Comptroller of the Currency and to enjoin the collection of the assessment upon the shareholders authorized by him, must likewise fail. We are dealing here with the extent of the power of the Comptroller to appoint a receiver for an insolvent bank, and to call for a ratable assessment upon its shareholders under the Act of June 30, 1876, § 1, 12 U.S.C. § 191 (12 U.S.C.A. § 191); and it is settled that the determination as to the solvency of a national bank, and the necessity of an assessment against its shareholders, and the amount thereof, is committed exclusively to the judgment and discretion of the Comptroller, and it is not subject to judicial review."

See, also, Bushnell v. Leland, 164 U.S. 684, 17 S.Ct. 209, 41 L.Ed. 598; Washington Loan & Trust Co. v. Allman, 63 App. D.C. 116, 70 F.(2d) 282; Harper v. Moran, 64 App.D.C. 210, 211, 76 F.(2d) 980, Cooper v. Woodin, supra; Crawford v. Gamble (C.C.A.6th) 57 F.(2d) 15.

■ It is contended by the appellants that the receiver's statements of condition of the Bank's assets disclose that the Bank is now solvent. Their computation, however, excludes from consideration the interest which has accrued upon the debts of the Bank since the date when the receiver took possession of it. It is contended by appellants that interest should not be computed upon the Bank's debts after the time when it was closed by the receivership, that the claims of the creditors at that time became claims in rem against the assets of the bank and afterwards bore no interest as against the stockholders. In support of this proposition appellants cite, among other cases, Chemical Nat. Bank v. Armstrong (C.C.A.) 59 F. 372, 28 L.R.A. 231. It is plain, however, that no part of the assets of the Bank may be turned over by the receiver to the stockholders until after both the principal of the debts and the interest thereon are fully paid. In the present case the assets are not sufficient in value to pay both in full, and consequently the stockholders are not entitled to demand a restoration of the Bank and its property to them.

In Richmond v. Irons, 121 U.S. 27, 7 S. Ct. 788, 805, 30 L.Ed. 864, it is said by the Supreme Court of the United States:

"Three other questions raised upon the record remain to be disposed of. The first is whether interest upon the debts of the bank should be allowed as against the stockholders from the date of the suspension. As the liability of the shareholder is for the contracts, debts, and engagements of the bank, we see no reason to deny to the creditor, as against the shareholder, the same right to recover interest which, according to the nature of the contract or debt, would exist as against the bank itself; of course, not in excess of the maximum liability as fixed by the statute. In the case of book-accounts in favor of depositors, which was the nature of the claims in this case, interest would begin to accrue as against the bank from the date of its suspension. The act of going into liquidation dispenses with the necessity of any demand on the part of the creditors; and it follows that interest should be computed upon the amounts then due as against the shareholders to the time of payment."

■ ■ We have not overlooked the request of the plaintiffs below for leave to file an amended bill in the case, and the court's denial thereof. In our opinion, however, this ruling of the court was not erroneous, and, moreover, a question such as this is committed to the sound discretion of the court, and there was no abuse of discretion in this instance.

The decree of the lower court is affirmed, with costs.