Wade H. Cooper v. Commissioner.
Wade H. Cooper v. Commissioner
Docket No. 24322.
United States Tax Court
1951 Tax Ct. Memo LEXIS 109; 10 T.C.M. (CCH) 851; T.C.M. (RIA) 51268; September 7, 1951
*109 Held: (1) The shares of the capital stock of the United States Savings Bank of Washington, D.C., became worthless prior to the taxable year 1946; (2) in the taxable year 1946 petitioner realized net taxable income in the amount of $7,433.88, or the difference between the amount he paid certain creditors of the United States Savings Bank for an assignment of their respective claims and the amount he received from the Comptroller of the Currency in that year in payment of such claims. Wade H. Cooper, pro se, and Orville H. Walburn, Esq., for the petitioner. George J. LeBlanc, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves a deficiency in income tax for the year *110 1946 in the amount of $2,930.22. By amended answer, the respondent asks for an increase in the deficiency to the amount of $3,335.63. The contested issues are: (1) Whether the capital stock of the United States Savings Bank, Washington, D.C., owned by petitioner, became worthless during the taxable year 1946. (2) Whether the difference between the amount paid to former depositors for their assignment to him of their respective claims against the United States Savings Bank, then in liquidation, and the amount petitioner received in 1946 from the Comptroller of the Currency in payment of such assigned claims constituted taxable income to petitioner. Findings of Fact Petitioner is a resident of Washington, D.C. His return for the year 1946 was filed with the collector of internal revenue for the district of Maryland. For approximately 25 years prior to 1933 petitioner had been an executive officer and a stockholder of several banks in the District of Columbia. One of such banks was the United States Savings Bank (hereinafter referred to as the Bank) of which petitioner was the president and owner of 560 shares, or 56 per cent of its authorized capital stock. This stock had *111 been acquired over a period of years at an estimated average cost of $150 per share, or a total of $84,000. On March 6, 1933 the Bank, as well as other banks throughout the country, was closed by Presidential proclamation. On March 17, 1933 the Acting Comptroller of the Currency appointed a Conservator, and on February 10, 1934 appointed a Receiver. Commencing in September 1933 and continuing over a period of years, petitioner instituted various legal proceedings against the Secretary of the Treasury, the Comptroller of the Currency and the Receiver, contesting, inter alia, the receivership, the insolvency of the Bank and the rate of interest to which the creditors of the Bank were entitled. A reference to these proceedings and the appeals taken in respect thereto is set forth in a footnote. [1] A detailed analysis thereof is not material here. *112 In February 1937 the Receiver for the Bank levied an assessment of 100 per cent against the stockholders and in August 1937 filed a suit to collect the same. Petitioner contested the assessment but sometime in 1944 compromised the assessment against him at the rate of $13.25 per share. The creditors of the bank received 100 per cent of their principal and a partial interest dividend of 10 per cent. The stockholders received no payment on account of their stock interest. The receivership was closed on December 31, 1945. Shortly before October 5, 1945, petitioner mailed a postcard to certain of the former depositors of the Bank inviting them to visit him at an office he had rented for that purpose. On October 3rd, 4th and 5th a number of such depositors called in response to petitioner's invitation. Petitioner had previously prepared a statement setting forth the history of the litigations respecting the receivership of the Bank, the alleged dissipation of the assets in expenses and litigation by the Receiver, the allegedly erroneous decision of the court in allowing the depositors six per cent interest instead of three per cent, the fact that the stockholders had refrained from *113 declaring dividends in order to build up and maintain a large reserve to protect depositors, and suggesting that three per cent would be a fair settlement of their claims for interest since the date of the Bank's closing. This statement was given to the former depositors to read. Some agreed to accept the proposed three per cent in settlement and some refused. Some other depositors agreed to accept three per cent but later demanded six per cent, which petitioner paid. Subsequent to the taxable year 1946 petitioner paid an additional three per cent with respect to six or seven assignments. The payments, however, made by the Comptroller of the Currency with respect to such assignments were not received in the taxable year 1946, and are not included in the amounts received from the Comptroller in such year. Those who accepted petitioner's proposal executed a written assignment in the following form: "WADE H. COOPER 1405 V STREET, N.W. WASHINGTON, D.C. (100 per cent principal had all been paid) ASSIGNMENT OF CLAIM "For and in Consideration of the sum of $ and other good and valuable considerations, the receipt of which is hereby acknowledged, the undersigned does hereby transfer, *114 assign and convey to Wade H. Cooper all right, title and interest in and to my proved claim against the United States Savings Bank, of Washington, D.C., and my Receiver's Certificate No…. evidencing same. I transfer, assign, and convey unto said Wade H. Cooper all my right, title and interest in and to said proved claim, and the said Receiver's Certificate evidencing the same. Said Receiver is hereby authorized and directed to note this transfer, conveyance and assignment on the books and records of the Receivership, and to pay to said Wade H. Cooper whatever amount is found to be due me, if any, by reason of said proved claim. Witness my hand and seal this the day of , 1945. Witness Signed (SEAL) Address Address " Several days after petitioner received the foregoing assignments the Supreme Court of the United States, on October 8, 1945, denied the petition for certiorari in the case of Parsons v. Barry et al., 326 U.S. 726, in which case the Circuit Court of Appeals for the District of Columbia had affirmed the decision of the lower court that the creditors were entitled to be paid interest at the rate of six per cent per annum upon their allowed claims. On *115 November 5, 1945, the Supreme Court denied a petition for rehearing. During the taxable year 1946 petitioner received from the Comptroller of the Currency checks aggregating $10,619.83 with respect to the aforesaid assignments. Each check was dated November 5, 1945, and made payable to the original depositor. By endorsement written across the face of the instrument and signed by an agent for the Comptroller of the Currency, such checks were made payable to the order of Wade H. Cooper. On his return for the year 1946 petitioner disclosed the receipt of checks aggregating $9,508.28, but did not include any part of such amount in the computation of this taxable net income. The return contained the following explanation: "I am not including $9,508.28 called interest by the Receiver of the U.S. Savings Bank, but which is a liquidating dividend. I paid the depositors 1/3d of this sum out of my pocket, which may be an additional deduction, but I do not know. I paid them $3,000.00 to settle." In his deficiency notice the respondent increased the net income reported by petitioner on his return by the net amount of $6,508.28 ($9,508.28 - $3,000). By amended answer the respondent requests *116 an increased deficiency based on the receipt by petitioner of the amount of $10,619.83, and allowing as the consideration three dollars for each $10 of interest payment received, or $3,185.95, making the net income realized by petitioner in 1946 from the aforesaid assigned claims the sum of $7,433.88. The shares of the capital stock of the United States Savings Bank owned by petitioner became worthless prior to the taxable year 1946. Petitioner, in the taxable year 1946, realized taxable income in the amount of $7,433.88, or the difference between the amount he paid to certain former depositors of the Bank for the assignment to him of their respective interest claims, and the amount he received from the Comptroller of the Currency in payment of such assigned claims. Opinion The first issue presents the question whether the shares of the capital stock of the United States Savings Bank, Washington, D.C., became worthless in the taxable year 1946. At the time this Bank was closed in 1933, petitioner owned 560 shares of its capital stock, which he had acquired at various times at an average cost of $150 per share. Petitioner made no claim on his 1946 return for a loss deduction *117 on account of the worthlessness of such shares. In his petition filed in this proceeding he alleges that he sustained a loss in the amount of $352,800, representing the market value of such shares at the time of the Bank's closing. Since we have found as a fact that the shares of capital stock of such Bank became worthless prior to the taxable year 1946, the actual amount of petitioner's loss is not material. The record establishes that the Bank was first closed in March 1933, pursuant to a proclamation of the President closing all banks. It was later opened for business in a conservatorship, and in 1934 was placed in receivership for the purposes of liquidation. In 1937 the Receiver made a 100 per cent assessment against the Bank's stockholders. In 1944 petitioner compromised his liability under such assessment by the payment to the Receiver of an amount approximating $13.25 per share. While the assets of the Bank were sufficient to pay to its creditors a dividend of 100 per cent of their proven claims, they were not sufficient to pay their claims for interest in full. The receivership was finally closed on December 31, 1945. No payment was ever made to stockholders on account of *118 their stock interest. It is not necessary for us to determine the year in which the Bank's shares became worthless. In view of the facts and circumstances shown by the record, we think it is clear that such shares became worthless not later than the final date on which the receivership was closed in 1945. We, therefore, conclude that petitioner sustained no deductible loss in the taxable year 1946 on the 560 shares of the capital stock of said Bank which he owned at the time the Bank was closed. The second issue involves the question whether the difference between the amount petitioner paid to certain of the creditors of the Bank for an assignment of their claims and the amount he received in the taxable year from the Comptroller of the Currency in payment of such assigned claims constituted taxable income of petitioner. Petitioner contends that the difference between the amount he paid the assignors for their interest claims and the amount he received from the Comptroller of the Currency in payment of such assigned claims constituted a gift from the assignors which is therefore excludable from gross income under section 22 (b) (3) of the Internal Revenue Code *119 . The issue is factual. A gift is a gratuitous transfer of property. Hawke v. Commissioner, 109 Fed. (2d) 946; Commissioner v. Montague, 126 Fed. (2d) 948; Detroit Edison Co. v. Commissioner, 131 Fed. (2d) 619; affd., 319 U.S. 98. These assignments show that the transfers were for a valuable consideration. Petitioner was not personally indebted to the assignors; therefore, there is not involved any element of forgiveness of indebtedness as in the case of Helvering v. American Dental Co., 318 U.S. 322. Nor did petitioner purchase his own obligation at a discount, as in the case of Commissioner v. Jacobson, 336 U.S. 28. The assignments were absolute. Such an assignment is tantamount to a sale. Petitioner, for a valuable consideration, purchased a property right, i.e., a chose in action. The fact that the consideration paid was less than the assignor might ultimately have received when the claim was liquidated does not alter the character of the transaction. It was still an assignment and sale of a property right. At the time petitioner acquired the assignments, on the 3rd, 4th and 5th of October 1945, there *120 was pending in the Supreme Court an application for certiorari in a proceeding involving the rate of interest which the creditors of the Bank were entitled to receive. Parsons v. Barry, et al., 326 U.S. 726 (decided October 8, 1945). It is a reasonable assumption, therefore, that the assignors were acting for purely business reasons and without any donative intention. Each transaction was a separate sale. Petitioner made an investment for profit, and the gain he realized thereon is includible in his gross income under section 22 (a) of the Internal Revenue Code. The record establishes that in the taxable year 1946 petitioner received from the Comptroller of the Currency, in liquidation of certain claims he had acquired by assignment, the sum of $10,619.83. Petitioner does not contest the receipt of that amount, but contends that the respondent has not allowed the proper cost basis in determining the amount of his gain. The record establishes that petitioner paid most assignors, as a consideration for the assignment of their respective claims, three per cent of the amount of their allowed claims against the Bank. In the taxable year 1946 petitioner *121 received, in connection with such assignments, a liquidating interest dividend of 10 per cent of the allowed claims, aggregating $106,198.30, three per cent of which is the sum of $3,185.95. The difference between the $10,619.83 which petitioner received in 1946 and the amount of $3,185.95 which he paid for such assignments, or the sum of $7,433.88, constitutes the net gain from the transaction which is includible in his gross income for such year. The evidence shows that with respect to six or seven assignments, petitioner did pay to the assignors, in a year subsequent to the taxable year 1946, an additional three per cent. The payments made by the Comptroller of the Currency with respect to such assignments were not received in the taxable year 1946, and are not included in the sum of $10,619.83. Therefore no part of the payment made for such assignments subsequent to the taxable year 1946 can be taken into consideration in determining the petitioner's net gain for the year 1946. Each assignment was a separate transaction, and petitioner's realized gain is to be determined in the year in which he received the proceeds from such assignment. The record shows that with respect to *122 three or four of the assignments acquired by petitioner, the Comptroller of the Currency refused to recognize them because of some irregularity, and made no payments to petitioner for such assignments in the taxable year. The amounts paid for such assignments, therefore, can not be taken into consideration in determining petitioner's net gain in the taxable year involved. Petitioner testified that there were six or seven additional assignments where an amount in addition to the three per cent was paid to such assignors. On brief, petitioner concedes that there is no specific evidence as to the amounts paid, to whom paid or when such payments were made. Hence there is no basis in this record for concluding that petitioner's cost was in excess of the three per cent which the respondent has used in determining the net taxable gain. We have, therefore, found as a fact that petitioner realized taxable net income in the year 1946 of $7,433.88, with respect to his transactions in connection with certain assignments. Decision will be entered under Rule 50. Footnotes
1. Cooper v. Woodin et al., 72 Fed. (2d) 179; United States Sav. Bank v. Morganthau, 66 App. D.C. 234; 85 Fed. (2d) 811; certiorari denied; 299 U.S. 605; rehearing denied, 301 U.S. 666; Parsons v. Barry et al., 59 Fed. Supp. 221; affd., 148 F. 2d 21; certiorari denied, 326 U.S. 726; rehearing denied, 326 U.S. 808↩ (November 5, 1945).