### In the Matter of RECEIVERSHIP OF PENN SQUARE BANK, N.A.

### No. CIV–82–1118–E.

United States District Court,
W.D. Oklahoma.

Jan. 20, 1983.

V. Burns Hargis, Oklahoma City, Okl. and Donald B. McKinley, Washington, D.C., Reynolds, Ridings & Hargis, Oklahoma City, Okl., for Federal Deposit Ins. Corp., receiver.

James E. Work, Oklahoma City, Okl., for "Founders Group".

John N. Hermes, Marion C. Bauman and Dee A. Replogle, Jr., Oklahoma City, Okl., for offeror.

Larry Derryberry, Oklahoma City, Okl., for Western Trust & Savings.

## ORDER

EUBANKS, Chief Judge.

On December 2nd, 1982, the Federal Deposit Insurance Corporation as Receiver of Penn Square Bank, N.A., Oklahoma City, Oklahoma (hereinafter the "Receiver"), appeared before this Court requesting authority pursuant to 12 U.S.C. § 192 to accept an offer made for the purchase of three tracts of real estate and the improvements thereon (described in the Receiver's Application), for the purchase price of $2,302,000.00.

The Receiver appeared by and through its attorneys, Donald B. McKinley and V. Burns Hargis. Also in attendance at the hearing were John N. Hermes, Marion C. Bauman and Dee A. Replogle, Jr., counsel for the offeror, M. Stanley Lee & Associates; Larry Derryberry, counsel for Western Trust & Savings; and James E. Work, counsel for Founders Bank & Trust Company, Nichols Hills Bank, Commerce Bank and Lakeshore Bank, N.A. (hereinafter the "Founders Group").

## FACTUAL BACKGROUND

On November 18th, 1982, the Receiver submitted to this Court an Application to Sell Fixed Assets. The fixed assets made the subject of the Application are three tracts of realty and the improvements, consisting of the Motor Bank, thereon. The Application was submitted to this Court subsequent to an offer made by M. Stanley Lee & Associates (hereinafter the "Lee Group") to the Receiver for the purchase of said fixed assets for the purchase price of $2,307,000.00.

The offer originally referred to in the Application additionally provided that Mr. Ben C. Wileman would tender to the Receiver the sum of $250,000.00 in full satisfaction of any claims or interests that the Receiver may retain under a Lease Agreement dated September 25th, 1959 and entered into between Ben C. Wileman and Addie Mae Wileman as Landlord and Penn Square Bank, N.A. as Lessee. The offer further permitted the Receiver to occupy the Main Bank Building for a period of not less than one (1) year at a rental of ten dollars ($10.00) per square foot. Finally, the offer made the subject of the Application also included the agreement to assume the remaining insured deposits of the Deposit Insurance National Bank of Oklahoma City, Oklahoma (hereinafter "DINB") for the face value thereof.

The above-described offer was made subject to good, marketable title in either Penn Square Bank, N.A. or First Penn Corporation; approval by the respective Courts for such a sale of assets, a Quit Claim Deed from First Penn Corporation and the Receiver for the assets purchased; and charter approval for a national bank capitalized at $5,000,000.00 from the Comptroller of the Currency together with approval by the Federal Reserve Board of a bank holding company to hold the stock of the chartered bank.

In its Application, the Receiver requested that this Court set a hearing on the Application, and in the absence of a better intervening offer, authorize the Receiver to accept the offer submitted in its original form by M. Stanley Lee & Associates. By Order of this Court dated November 18th, 1982, a hearing upon said Application was set for December 2nd, 1982. It was additionally ordered that any parties objecting to the proposed sale of the subject fixed assets should appear and show cause of why this Court should not approve and authorize acceptance of the Lee Group offer for the purchase of said fixed assets. In connection therewith, this Court further ordered that the Receiver give notice of the hearing by publishing notice together with a description of the fixed assets and the consideration to be received in a newspaper of general circulation within and for the Western District of Oklahoma on two separate occasions prior to the hearing and provide copies of the Application and the Order to all parties having inquired or expressed an interest in writing to the sale of the fixed assets. Consistent with the provisions of this Order, the Receiver did cause to be published notice of the hearing in the Daily Oklahoman on Wednesday, November 24th, 1982 and Monday, November 29th, 1982, and additionally caused the Application and Notice of this hearing to be mailed to all parties who had heretofore expressed an interest in acquisition of the subject assets.

On December 1st, 1982, Western Trust & Savings (hereinafter "Western") did tender to the Receiver an offer to purchase the subject receivership assets for the purchase price of $3,000,000.00 conditioned upon, *inter alia,* immediate approval of the national bank charter application of Sunbelt Bank, which application would be amended to provide initial capital of $5,000,000.00 and to provide for a detached facility at the location of the motor bank (the improvements); or in the alternative, execution and delivery to Western of a binding FDIC commitment to insure depositor accounts of customers of Republic Trust & Savings at 501 South Boston, Tulsa, Oklahoma and 5001 North Pennsylvania, Oklahoma City, Oklahoma. With respect to this alternative, the purchase commitment was additionally subject to approval of the motor bank location as a branch office of Republic Trust & Savings by all appropriate governmental agencies.

Also on December 1st, 1982, the Lee Group amended their offer referenced by the Receiver's Application to Sell Fixed Assets. The amended offer only requires the Receiver to request expedited action on the charter application before the Office of the Comptroller of the Currency and the bank holding company application before the Federal Reserve Board. Accordingly, the terms of the original offer making the payment of the $2,307,000.00 contingent upon approval for the national bank charter application and the bank holding company application have been deleted.

On December 2nd, 1982, the Founders Group, after filing their appearance, did request from this Court a Continuance of the hearing. In support thereof, the Founders Group has contended that the Receiver had not provided timely or adequate notice of the sale.

All matters considered, counsel for the Receiver, during the course of the December 2nd, 1982 hearing, did request from this Court authority for the Receiver to accept the amended offer submitted on December 1st, 1982 by M. Stanley Lee & Associates, and in connection therewith, additionally requested that this Court deny the request of Founders Group for a Continuance. This Court, having heard the argument of counsel and all premises considered, does hereby find:

### FINDINGS

■ 1. With respect to the motion filed by the Founders Group for a continuance of the hearing, this Court finds that the Receiver has satisfied all requirements enumerated in this Court's Order of November 16th, 1982. Furthermore, there can be no question that there has been considerable press coverage to the proposed actions of the Receiver with respect to the subject fixed assets. All parties interested in submitting a bid or in independently investigating the conditions and circumstances surrounding the fixed assets had ample opportunity to do so. Finally, it should be added that it was the Receiver who requested that notice of the proposed actions be published in a newspaper of general circulation in the Western District of Oklahoma and by direct mailing to all parties who had heretofore expressed an interest in the purchase of these fixed assets. The basis for this request was the simple intent of the Receiver to maximize any recovery on the assets by affording interested parties an opportunity to present an offer to the Receiver more advantageous in terms and conditions than the original offer submitted by the Lee Group. With respect to the notice of this hearing, this Court accepts the findings of those interpretive cases of § 192, holding that proceedings pursuant to § 192 are intended to be *ex parte,* and that objecting creditors need not be made parties to such proceedings. See, *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Fahey v. Mallonee,* 332 U.S. 245, 253–254, 67 S.Ct. 1552, 1554–55, 91 L.Ed. 2030 (1947); *Mitchell v. Joseph,* supra at 255; *Fifer v. Williams,* supra at 288; *In the Matter of the Liquidation of American City Bank & Trust Company, N.A.,* 402 F.Supp. 1229, 1231 (E.D.Wis.1975); *In the Matter of the Liquidation of Franklin National Bank,* 381 F.Supp. 1390, 1393 (E.D.N.Y.1974). Accordingly, this Court finds that there is no basis for a Continuance and denies the motion for the same.

■ 2. The Receiver is authorized pursuant to 12 U.S.C. § 192 to, upon the order of a court of competent jurisdiction, "sell or compound all bad or doubtful debts; and, on a like order, may sell all the real and personal property of such association (Penn Square Bank, N.A.), on such terms as the Court shall direct." § 192 exemplifies Congress' directive that liquidations of insolvent national banks be expeditious and economical. Consistent with this directive are those cases holding that the actions of the Receiver with respect to § 192 are purely administrative. The Court's function is simply a condition upon the Receiver's exercise of the powers conferred by § 192. See *Mitchell v. Joseph,* 117 F.2d 253 (7th Cir. 1941). Accordingly, § 192 is not a court receivership. The statute does not create a general liquidation proceeding, nor does it

subject the Receiver to the general supervision and control of the Court as in a court appointed receivership. *Fifer v. Williams,* 5 F.2d 286 (9th Cir.1925).

■ 3. The Court's activities under § 192 do, of course, have judicial consequence. The statute requires that court approvals be evidenced by an Order. However, it is evident that this Court does not take part in the actual day-to-day liquidation process, nor does this Court set the terms and conditions for the proposed liquidation of receivership assets. It is clearly the congressional intent of § 192 that the Receiver perform such functions and this Court act simply in a review or supervisory capacity with respect to the actions of the Receiver. Therefore, unless the proposed actions of the Receiver are clearly erroneous, arbitrary or in bad faith, the Court must approve the proposed actions of the Receiver. See *U.S. v. Morgenthau,* 66 U.S. App.D.C. 234, 85 F.2d 811 (1936).

■ 4. The Federal Deposit Insurance Corporation as Receiver of Penn Square Bank, N.A. has reviewed both offers, the Western offer and the amended offer submitted by the Lee Group. The Receiver has requested authority to sell the fixed assets made the subject of its Application pursuant to the terms and conditions stipulated in the amended Lee Group offer. This request is made notwithstanding the fact that the offer submitted by Western, on its face, represents $500,000.00 more to the receivership estate than the Lee Group offer. However, this Court, after considering the argument of counsel, finds that the proposed actions of the Receiver are not clearly erroneous, arbitrary or in bad faith. In fact, this Court finds that the proposed action of the Receiver is reasonable and supported by sound judgment. The Western offer is contingent upon certain conditions precedent that are not present in the Lee Group offer. In essence, the Western offer represents a $500,000.00 "gamble" that the Comptroller of the Currency will "immediately" approve the national bank charter application of Sunbelt Bank, N.A. and that required approvals will be given to

the use of the Motor Bank as a detached facility. The Receiver does not know as of the present what dispositive actions the Office of the Comptroller of the Currency may take with respect to the national bank charter application. Nor does the Receiver know whether the Motor Bank may be used as a facility for the proposed national bank. With respect to the alternative condition precedent incorporated in the Western offer, there is considerable uncertainty as to whether deposit insurance coverage can be provided to the accounts of Republic Trust and Savings and whether the Motor Bank may be used as a branch office for Republic Trust & Savings. FDIC has made past determinations on whether deposit insurance coverage can be provided to trust companies organized under the laws of Oklahoma and has concluded that such coverage cannot be provided under then existing statutes.

5. Although hindsight may subsequently reveal that the enumerated conditions precedent could have been satisfied, the Receiver should not be required to speculate on what the future might hold for the uninsured depositors and other general creditors of the receivership estate. The recommended Lee Group offer imposes no requirement that the Receiver speculate or "gamble" on what other governmental entities may do with respect to a national bank charter application, the use of the motor bank as a facility or branch, or the affording of deposit insurance coverage to the deposits of a trust company organized under the laws of Oklahoma. Furthermore, in addition to the substantial sum to be realized by the Receiver for the sale of the subject fixed assets, and the present day cash value represented by that sum, there are other advantages inherent to the acceptance of the Lee Group offer. The Lee Group offer affords the Receiver the right to lease the main bank building for at least one (1) year at a sum of ten dollars ($10.00) per square foot. This sum is apparently less than present day market values for similar leased office space. Related to the economic advantages represented by the

proposed lease arrangements are the advantages to the Receiver and to creditors of the receivership estate of a non-interruption of receivership operations. An interruption of such activities at this early date would not be in the best interests of the Receiver or the creditors of the receivership estate. Accordingly, this Court finds that the proposed actions of FDIC are not clearly erroneous, arbitrary or in bad faith and instead are supported by the identified present day best interests of the receivership estate, and accordingly,

IT IS HEREBY ORDERED that the request for a Continuance made by the FOUNDERS GROUP is denied, and

IT IS FURTHER ORDERED that the Receiver may accept the offer as amended of M. Stanley Lee & Associates for the purchase of the fixed assets sought to be sold herein.