**JAMES MADISON LIMITED, by Norman F. HECHT, Sr., Assignee, Plaintiff,**

v.

**Eugene A. LUDWIG, Comptroller of the Currency, and Office of the Comptroller of the Currency, and Federal Deposit Insurance Corporation, Defendants.**

Civ. A. No. 93–0792(RCL).

United States District Court, District of Columbia.

Oct. 28, 1994.

William Joseph Smith, Stohlman, Beuchert, Egan & Smith, Washington, DC, for plaintiff.

Thomas Holzman, FDIC, Legal Div., Washington, DC, for defendants.

### MEMORANDUM OPINION

* LAMBERTH, District Judge.

■ This case comes before the court on defendants' motions to dismiss the complaint for lack of subject matter jurisdiction, Fed. R.Civ.P. 12(b)(1), failure to state a claim upon which relief can be granted, Fed. R.Civ.P. 12(b)(6), or, in the alternative, for summary judgment under Rule 56(b).[1] Upon consideration of defendants' motions,

plaintiff's opposition thereto, and materials submitted by the parties in support of their positions, the defendants' request for summary judgment will be granted.

### I. Introduction

In their motions to dismiss, or in the alternative for summary judgment, defendants argue that this court lacks jurisdiction to review the Office of the Comptroller of the Currency's (OCC) decision to declare banks owned by plaintiff James Madison Limited (JML) insolvent and place them in receivership. The court finds that it does have jurisdiction to review the OCC's actions under the Administrative Procedures Act (APA); however, such review is limited to ascertaining whether the OCC actions were "arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

#### A. Summary Judgment Standard

■ The court treats defendants' motions as a request for summary judgment under Fed.R.Civ.P. 56(b). The parties have had a "reasonable opportunity to present all material made pertinent to [the] motion by Rule 56," *Neal v. Kelly*, 963 F.2d 453, 456 (D.C.Cir.1992), and indeed the parties have submitted affidavits, bank records, and other materials pertinent to the dispute. Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. *E.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *E.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

#### B. Background

Plaintiff JML is a bank holding company which was the parent corporation of a number of banks, collectively referred to here as the "JML banks." The JML banks first

---

1. Although defendant FDIC's Motion to Dismiss technically does not request this court to treat the motion as a Motion for Summary Judgment in the Alternative, the court may nevertheless invoke this procedure *sua sponte. See Neal v. Kelly*, 963 F.2d 453, 456 (D.C.Cir.1992).

came to the attention of the OCC in June of 1988, when OCC examinations of the banks revealed statutory and regulatory violations, problem loans, credit administration problems, and inadequate methodology for determining allowances for loan and lease losses (ALLL). The OCC concluded that there had been a serious deterioration in the financial position of the banks. The OCC notified bank officers that the banks would be subject to special supervisory attention, and in April of 1989 the banks entered into commitment letters with the OCC to address the OCC's various concerns. Despite continuing efforts on the part of the JML banks and the OCC to address specific problems, the condition of the banks continued to deteriorate. In February of 1991, the OCC informed the banks that their Uniform Financial Institutions Rating System or "CAMEL" rating was being downgraded to 5, or "unsatisfactory." A rating of 5 means that an institution has an extremely high short-term probability of failure, and that an immediate infusion of capital is required.

The OCC particularly noted that the banks' approach to calculating ALLL[2] demonstrated "continuing severe weaknesses," and it concluded that the banks were persistently underestimating the risk of loss associated with their outstanding loans. After initiating an on-site examination of the JML banks, the OCC prepared its own ALLL analysis to determine whether the banks' ALLL reserves were sufficient. In performing this analysis, examiners first reviewed a portion of the banks' outstanding loans in order to categorize them according to their quality. Next, the examiners performed a "migration analysis" to estimate necessary reserve amounts based on projected future losses from bad loans. Throughout this process, the banks were given an opportunity to and did comment on the examiners' classification of loans and their methodology in calculating ALLL.[3] Nevertheless, the OCC's determination of necessary ALLL reserves

differed substantially from that of the JML banks and the banks' own auditors. In fact, the OCC found that based on its analysis, the amount needed to replenish ALLL at the banks would substantially exceed the banks' existing equity capital.

As a result of these findings, the OCC advised the banks on May 1, 1991, that additional loan loss reserves of $31.65 million would be required at the JML banks. These additional reserve requirements resulted in substantial equity capital deficits at the banks, and the OCC requested the banks to submit a proposed Capital Plan which would remedy this shortfall. JML submitted a plan which relied in large part upon funds "to be raised from private sources or from or together with FDIC open bank assistance." The OCC rejected this plan on the grounds that it did not present firm sources of equity capital sufficient to meet the banks' short term needs. On May 10, 1991, the OCC declared the JML banks insolvent and appointed the FDIC as receiver for the banks. The FDIC then entered into a Purchase and Assumption Agreement with Signet Bank, under which Signet agreed to purchase certain assets, deposits and liabilities of the JML banks.

In April of 1993 JML, through its assignee Mr. Norman Hecht, filed suit in this court seeking to have the actions of the OCC and the FDIC set aside. JML asserts that both the process by which the OCC calculated ALLL reserves for the JML banks and the OCC's rejection of JML's Capital Plan were improper. Also, JML claims that the FDIC wrongfully declined to provide it with funds in the form of Open Bank Assistance. Specifically, JML's complaint alleges that these actions were arbitrary and capricious, constituted an abuse of discretion, and were done without observance of procedure required by law under § 706(2)(A) & (D) of the Administrative Procedure Act. JML has also filed a

---

2. ALLL refers to allowances which a bank must make in order to compensate for projected shortfalls in the repayment of outstanding loans. The determination of appropriate ALLL amounts involves highly complex and occasionally subjective calculations, and it is one of the principal issues of contention between the parties.

3. In addition to soliciting comment from JML regarding its ALLL analysis, the OCC subjected its findings to several internal review procedures, each of which found the loan classifications and ALLL methodology to be sound.

motion for leave to amend its original complaint to add due process and Federal Tort Claims Act (FTCA) counts.

## II. Procedural Issues

### A. Jurisdiction

Defendant OCC argues that this court lacks subject matter jurisdiction because the Comptroller's decision to declare a bank insolvent under § 191 of the National Bank Act, 12 U.S.C. § 191, is final and unreviewable. The court does not agree.

■ Persons adversely affected by the action of a federal agency normally have a limited right to judicial review under the APA. *See* 5 U.S.C. § 702. However, this review procedure is unavailable in situations where a statute explicitly precludes judicial review, § 701(a)(1), or where "agency action is committed to agency discretion by law," § 701(a)(2). Nothing in § 191 of the National Bank Act affirmatively *precludes* judicial review.[4] The "agency action committed to agency discretion by law" exception applies "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971) (internal quotations omitted). The key question is whether "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985).

■ At the time the JML banks were declared insolvent and placed in receivership, § 191 of the National Banking Act[5] provided that "whenever the Comptroller shall become satisfied of the insolvency of a national banking association, he may, after due examination of its affairs ... appoint a receiver, who shall proceed to close up such association." 12 U.S.C. § 191 (1988). Defendant OCC em-

phasizes the language of the statute which permits the Comptroller to appoint a receiver "whenever [he] ... become[s] satisfied" of a bank's insolvency. The OCC suggests that whether a bank is *in fact* insolvent is irrelevant; all that matters is whether the Comptroller has *subjectively* determined that it is. The OCC thus concludes that § 191 grants the Comptroller absolute, unreviewable discretion to declare banks insolvent and appoint receivers. The OCC is mistaken.

The determination of a bank's insolvency clearly does not present a situation in which a reviewing court would "have no meaningful standard" against which to judge the OCC's action. While it is certainly true that the language of § 191 vests the Comptroller with substantial discretion in determining whether a bank is insolvent, it is equally clear that to be legitimate, there must be *some* basis for the Comptroller's action. In a case predating the enactment of the APA, the D.C. Circuit held that a court "will not substitute its judgment for the judgment of the Comptroller, *unless it appears by convincing proof that the Comptroller's action is plainly arbitrary, and made in bad faith." United States Savings Bank v. Morgenthau,* 85 F.2d 811, 814 (D.C.Cir.), *cert. denied,* 299 U.S. 605, 57 S.Ct. 232, 81 L.Ed. 446 (1936) (emphasis added). The *Morgenthau* court's language anticipates the wording of § 706(2)(A) of the APA, which provides for judicial review of agency actions which are "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." The parties have not cited, nor has this court's own research revealed, any cases which have explicitly held that insolvency determinations under § 191 are reviewable under the APA; however, dicta from other courts supports the conclusion that they are. *See Federal Deposit Ins. Corp. v. Irwin,* 916 F.2d 1051, 1054, n. 4 (5th Cir.1990) (noting that "[a]n insolvency receivership decision that is arbitrary, capricious, or an abuse of discretion is reviewable under the Administrative Procedure Act"); *see also*

---

4. *Other sections of the National Bank Act do specifically provide for judicial review. For example, in 1989 Congress amended § 203 of the Act to provide for judicial review of conservatorship decisions made by the OCC. See* 12 U.S.C. § 203(b) (Supp. IV 1992).

5. The statute has since been amended so that the grounds for appointing a receiver under § 191 include those set forth in 12 U.S.C. § 1821(c)(5). For the present purposes, the relevant language is found in the 1988 version of the statute, quoted in the body of this opinion.

*In re Liquidation of American City Bank and Trust Co.,* 402 F.Supp. 1229, 1230 (E.D.Wis.1975); *In re Liquidation of Franklin Nat'l Bank,* 381 F.Supp. 1390, 1392 (E.D.N.Y.1974).

Defendant OCC cites *Adams v. Nagle,* 303 U.S. 532, 58 S.Ct. 687, 82 L.Ed. 999 (1938), in which the Supreme Court found that it would be "intolerable" to permit judicial review of the Comptroller's exercise of his discretion in ordering assessments against the shareholders of a defunct bank. *Id.* at 540, 58 S.Ct. at 692. *Adams* is not controlling for a number of reasons. First, *Adams* was decided prior to the enactment of the APA, so at the time there was no statutory basis for reviewing agency decisions. Second, the *Adams* Court observed that a showing of fraud on the part of the Comptroller might provide a basis for judicial review of the Comptroller's decision. The Court specifically noted that the complaint contained no allegations of "bad faith or fraud on the part of the Comptroller." *Id.* at 542, 58 S.Ct. at 692. Thus, the Court did not wholly foreclose the possibility of judicial review under proper circumstances. Finally, the Court's admonition that it would be "intolerable if the Comptroller's decision could be attacked collaterally in every suit" by an aggrieved party, *id.,* must be considered in light the fact that the banking industry was in a state of emergency during much of the 1930s. Clearly, the Court would have been particularly unwilling to subject bank regulators to judicial second-guessing during this time period.

In sum, although the Comptroller's decision to declare a bank insolvent and appoint a receiver under 12 U.S.C. § 191 is highly discretionary, it is not immune from judicial review. Under § 706(2)(A) of the APA, a court may review the Comptroller's decision to determine whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

### B. Scope of Review

The parties disagree over the appropriate scope of review—that is, what evidence the court may consider in ruling on this summary judgment motion. Defendant OCC argues that the scope of review is limited to the administrative record, while the plaintiff contends that the court may consider bank files, credit records, and all other documents made available to the bank examiners during their investigation of the JML banks. Local Rule 108(h) provides that in motions for summary judgment each party shall file a statement of undisputed, material facts, and "the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed" by the opposing party. The facts established under this procedure provide ample basis for the court's ruling in this case; therefore, it is unnecessary to address the party's arguments concerning the scope of review.

### C. Standard of Review

The Comptroller's decision to declare the JML banks insolvent is entitled to great deference from this court. *See Motor Vehicle Mfrs. v. Ruckelshaus,* 719 F.2d 1159, 1164 (D.C.Cir.1983). There is a presumption that agency action is valid. *Id.* Furthermore, "[w]hen reviewing an agency's decision concerning matters lying within the agency's field of expertise, a reviewing court should begin by acknowledging that a presumption of procedural and substantive regularity attaches." *Franklin Savs. Ass'n v. Director, Office of Thrift Supervision,* 934 F.2d 1127, 1147 (10th Cir.1991). The presumption of the correctness of an agency's determination "is even stronger where Congress has charged an agency with complex analytical responsibilities and the duty to make predictive judgments." *Id.* at 1147–48.

Analyzing a bank's loan portfolio in order to identify problem loans, classifying those loans according to their risk, estimating the future performance of outstanding loans, and calculating appropriate ALLL levels are precisely the type of technical, predictive judgments of which courts should be extremely deferential. Thus, in examining the process by which the Comptroller reached his decision to declare the JML banks insolvent and appoint a receiver, this court's inquiry is limited to determining whether there was a "rational basis" for the

decision. *See Franklin Savs.*, 934 F.2d at 1148.

## III.   Analysis

### A.   OCC's Insolvency Determination

Defendant OCC's statement of undisputed facts sets forth in great detail the process by which it examined, supervised, and ultimately shut down the JML banks. Neither the OCC's description of how it proceeded nor the plaintiff's criticisms of the OCC's actions suggest that the OCC performed its examination of the JML banks in an especially unusual or cursory manner. JML offers a litany of complaints about particular choices and methods employed by OCC officials who investigated the banks; however, it is clear that these complaints amount to no more than a difference of opinion about the particular choices made by OCC personnel in performing their duties.

JML claims that bank examiners often departed from OCC guidelines in analyzing the banks loans. For example, JML argues that in evaluating and categorizing loans, OCC policy mandates that "[n]either values of property ... nor adjustments to appraisals are to be based upon worst case scenarios that are unlikely to occur." Def.'s Mem. in Opp. to OCC's M.Sum.J. at 8. JML also objects to the "migration analysis" by which OCC personnel calculated ALLL reserves for the banks. JML offers statements from its own auditing firms to the effect that the method used by the JML banks to calculate ALLL, which produced a substantially lower figure than the OCC's, was "acceptable." They also offer a number of criticisms of OCC's use of migration analysis, claiming that various factors "distorted" the results of the analysis.

Certainly, if there were evidence that the OCC specifically set out to find the JML banks insolvent and place them in receivership, regardless of their true financial state, this court would intervene. Or if it appeared that OCC examiners had been derelict in their duties, classifying loans at whim and pulling numbers out of the air rather than actually examining bank records and performing necessary calculations, relief would be granted. However, plaintiff's objections to the OCC's examination are, in reality, simply disagreements regarding the choices made by OCC personnel in examining and analyzing the banks.

The court certainly does not question the genuineness of JML's disagreement or the sincerity of its belief that the bank examiners failed to consider documents, arguments, and alternatives which JML believed were relevant to the decisions they were making. However, strong disagreement with another's decision-making process does not by itself render that process "arbitrary and capricious." Nor does the possibility that some examiners may have departed from OCC *guidelines* in reviewing some loans mean that the Comptroller's decision to declare the bank insolvent and appoint a receiver was "not in accordance with *law*" under the APA. 5 U.S.C. § 706(2)(A). It is clear from the statement of undisputed facts that there is a rational basis for the procedures followed by the OCC and the decisions made by its personnel in examining the JML banks. Furthermore, during the entire examination period, JML was given the opportunity to and did make comments and suggestions regarding the OCC's investigation. Also, the OCC's calculation of ALLL was subjected to at least two layers of review within the agency, and was determined to be sound. However forcefully JML disagrees with the OCC's determination, it has not shown that the process by which the OCC reached that determination was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Accordingly, there is no basis under the APA for this court to set aside the OCC's finding of insolvency.

### B.   FDIC and OCC's Denial of Open Bank Assistance and Rejection of JML's Capital Plan

In Counts V and VI plaintiff JML contends that the decision of the OCC and the FDIC to deny JML's request for Open Bank Assistance and to reject JML's proposed Capital Plan were arbitrary and capricious, and an abuse of discretion under 5 U.S.C. § 706(2)(A). For the essentially the

same reasons set forth above, defendant OCC's request for summary judgment as to these Counts is granted.

### C. JML's Motion to Amend its Complaint

Plaintiff JML seeks leave to amend its complaint to include a claim under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. Because the Comptroller's decision to declare a bank insolvent under 12 U.S.C. § 191 falls within the "discretionary function" exception to the FTCA, 28 U.S.C. § 2680(a), this motion is denied as futile. *See Federal Deposit Ins. Co. v. Irwin*, 916 F.2d 1051, 1053–54 (5th Cir.1991). Plaintiff also seeks to add a Fifth Amendment Due Process claim, seeking a declaration from this court that § 191 of the National Banking Act is unconstitutional because it does not provide for a formal hearing either before or after the appointment of a receiver. This claim is without merit and is likewise denied as futile.

### IV. Conclusion

For the reasons set forth herein, defendants' request for summary judgment is granted. Plaintiff's motion to amend its complaint to add new claims is denied as futile.

A separate order shall issue this date.

### ORDER

For the reasons set forth in an accompanying memorandum opinion issued this date, it is hereby ORDERED:

1. Plaintiff's Motion for Leave to File a Supplemental Memorandum in Opposition to Defendant OCC's Motion for Summary Judgment is GRANTED, *nunc pro tunc*.

2. Plaintiff's Motion for Leave to File a Second Affidavit of Mitchel Neitzey is GRANTED.

3. Plaintiff's motion to amend its complaint to add FDIC in its corporate capacity is GRANTED.

4. The balance of plaintiff's motion to amend its complaint is DENIED as futile.

5. Defendant OCC's summary judgment motion is GRANTED.

6. Defendant FDIC's summary judgment motion is GRANTED.

7. This action now stands DISMISSED WITH PREJUDICE.

SO ORDERED.